## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TWIN CITY FIRE INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> GLENN O. HAWBAKER, INC., DANIEL HAWBAKER, PATRICK HAWBAKER, and D. MICHAEL HAWBAKER <br><br> Defendants. | No: 4:22-CV-01485 <br><br> (Chief Judge Brann) |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Twin City Fire Insurance Co. ("Twin City"), for its First Amended Complaint against Defendants Glenn O. Hawbaker, Inc. ("Hawbaker") and Daniel Hawbaker, Patrick Hawbaker, and D. Michael Hawbaker (collectively, (the "Hawbaker Directors")), avers as follows:

## I.    INTRODUCTION

1.    This is an insurance coverage dispute in which Twin City seeks a declaration that there is no insurance coverage for any defense costs or indemnity in connection with (a) Hawbaker's defense, settlement, or liability arising out of a putative class action filed against Hawbaker, styled *James C. King v. Glenn O. Hawbaker, Inc.*, Case No. 2021-957, currently pending in the Pennsylvania Court of Common Pleas, Centre County (the "King Class Action"); or (b) Hawbaker's and

the Hawbaker Directors' defense, settlement, or liability arising out of another putative class action, styled *Lester Packer, Sr. v. Glenn O. Hawbaker, Inc.,* Case No. 21-cv-01747, currently pending in the Middle District of Pennsylvania (the "Packer Class Action") (collectively, the "Underlying Class Actions"). The plaintiffs in the Underlying Class Actions allege claims for theft and misuse of over $20 million in wage benefits that should have been otherwise paid to Hawbaker employees.

2.     Hawbaker and the Hawbaker Directors seek insurance coverage for the Underlying Class Actions under Twin City Private Choice Premier Policy No. 83 KB 0349589-21 (the "2021 Twin City Policy"), which Twin City issued to Hawbaker. (A copy of the 2021 Twin City Policy is attached hereto as Exhibit "A.") The Policy Period under the 2021 Twin City Policy is April 1, 2021 to April 1, 2022.

3.     In June 2018, several years prior to the effective date of the 2021 Twin City Policy, the Commonwealth of Pennsylvania conducted a criminal investigation of Hawbaker's wage benefits practices. In April 2021, the Commonwealth filed a criminal complaint against Hawbaker, styled *Commonwealth of Pennsylvania v. Glenn O. Hawbaker, Inc.*, Docket No. CR-89-2021 (the "Criminal Action"), alleging that Hawbaker "stole $20,696,453 in fringe benefit funds from prevailing wage workers between September 1, 2015 and December 31, 2018 and used that money to pay for all [Hawbaker] benefits and otherwise to lower the company's costs."

Hawbaker resolved the Criminal Action by Plea Agreement, agreeing to, among other things, pay over $20 million in restitution.

4.     Victims of Hawbaker's theft then filed the Underlying Class Actions, alleging, among other things, that Hawbaker: (1) failed to provide employees with certain fringe benefits to which they were entitled; (2) failed to timely pay all amounts owed for prevailing wage workers' retirement benefits as required by Pennsylvania or Federal law; (3) underfunded the health and welfare component of the total fringe benefits paid between 2015 and 2018; (4) deprived Hawbaker employees of profit sharing benefits; and (5) improperly classified various worker classifications and their associated prevailing wage rates.

5.     The Underlying Class Actions seek, among other things, restitution relating to Hawbaker's theft and misuse of funds it diverted during the period from 2015 to 2018.

6.     Hawbaker provided Twin City with notice of the Criminal Action and the Underlying Class Actions and requested insurance coverage under the 2021 Twin City Policy.

7.     Twin City denied coverage for these lawsuits for multiple reasons, including without limitation because the 2021 Twin City Policy does not provide coverage for, among other things, any Loss (a) in connection with any Claim based upon, arising from, or in any way related to any claims for unpaid wages; (b) in

connection with any Claim based upon, arising from, or in any way related to any actual or alleged violation of the duties and responsibilities that are imposed upon an Insured by any federal, state or local law or regulation that govern wage, hour, and payroll practices, including the calculation and payment of wages (including prevailing wage rates) or the calculation and payment of benefits; (c) that was not fortuitous or that was in progress or known prior to the Policy's inception date; or (d) that constitutes restitution. Twin City also explained that certain representations in Hawbaker's application for the 2021 Twin City Policy and the prior year's policy (the "2020 Twin City Policy") appeared to be incorrect, which would also bar coverage if those representations were indeed incorrect.

8.     Hawbaker disputed Twin City's coverage determination and continued to demand coverage. Accordingly, on September 21, 2022, Twin City commenced this action, seeking a declaration that Hawbaker is not entitled to insurance coverage for any defense costs or indemnity associated with Hawbaker's defense, settlement, or liability arising out of the Criminal Action or the Underlying Class Actions under the 2020 Twin City Policy or the 2021 Twin City Policy.

9.     On December 29, 2022, Hawbaker filed an Answer with Counterclaim in which Hawbaker, among other things, acknowledged that there was no coverage for the Criminal Action under the 2021 or 2020 Twin City Policies and that there was no coverage for the Underlying Class Actions under the 2020 Policy but asserted

that Hawbaker is entitled to coverage for the Underlying Class Actions under the 2021 Twin City Policy and that the Hawbaker Directors are entitled to coverage for the Packer Class Action under the same Policy.

10.     Accordingly, Twin City files this Amended Complaint to streamline the issues in dispute, protect its rights, and obtain a declaration that there is no coverage for either of the Underlying Class Actions under the 2021 Twin City Policy.

## II.     PARTIES, JURISDICTION, AND VENUE

11.     Twin City is a corporation organized under the laws of the State of Indiana with its principal place of business located at One Hartford Plaza, Hartford, Connecticut, 06155-0001. Twin City is an insurance company.

12.     Hawbaker is a Pennsylvania corporation with its principal place of business located at 1952 Waddle Road, Suite 203, State College, Pennsylvania 16803. Hawbaker is a paving and construction company.

13.     Daniel Hawbaker is the President of Hawbaker and a resident of Pennsylvania. He maintains a business address at 1952 Waddle Road, Suite 203, State College, Pennsylvania 16803.

14.     Patrick Hawbaker is a Vice President of Hawbaker and a resident of Pennsylvania. He maintains a business address at 1952 Waddle Road, Suite 203, State College, Pennsylvania 16803.

15.     D. Michael Hawbaker is a Vice President of Hawbaker and a resident of Pennsylvania. He maintains a business address at 1952 Waddle Road, Suite 203, State College, Pennsylvania 16803.

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the controversy is between citizens of different states and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interests and costs.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Hawbaker is deemed to reside in this district, the Hawbaker Directors regularly conduct business in this district, the ERISA Plan at issue in the Packer Class Action is administered in this district, and the Underlying Class Actions were initiated in this district.

### III.   BACKGROUND

18.     The 2021 Twin City Policy is a claims-made policy, which contains, among other things, a Fiduciary Liability Coverage Part, subject to a $4 million aggregate limit and no retention. (Ex. A. at Declarations.) The 2021 Twin City Policy also includes an Employment Practices Liability Coverage Part, but Defendants acknowledge that Part does not provide any coverage for their claims.

19.     Under the terms of 2021 Twin City Policy, coverage is provided on a claims-made basis, and, as a condition of coverage, a Claim against an Insured must be first made during the Policy Period.  (Ex. A. at Common Terms and Conditions.)

20.     The 2021 Twin City Policy provides that Twin City shall "have the right and duty to defend Claims covered under the Policy."  (*Id.* at ¶ 14.)  However, "[f]or any Claim involving allegations, in whole or in part, of a Wage and Hour Violation, it shall be the duty of the Insureds, and not the Insurer, to defend such claim."  (*See* Ex. A, Section VII, Defense and Settlements.)

21.     "Wage and Hour Violation" means:

> any actual or alleged violation of the duties and responsibilities that are imposed upon an Insured by any federal, state or local law or regulation anywhere in the world, including but not limited to the Fair Labor Standards Act or any similar law (except the Equal Pay Act), which govern wage, hour, and payroll practices. Such practices include but are not limited to:
>
> (1) the calculation and payment of wages, overtime wages, minimum wages and prevailing wage rates;
>
> (2) the calculation and payment of benefits;
>
> (3) the classification of any person or organization for wage and hour purposes;
>
> (4) reimbursing business expenses;
>
> (5) the use of child labor; or
>
> (6) garnishments, withholdings and other deductions from wages.

(*Id.* at Fiduciary Liability Coverage Part § II.)

22.     The Underlying Civil Actions involve allegations, in whole or in part, of a Wage and Hour Violation.

23.     The insuring clause relating to the Fiduciary Liability Coverage Part provides, in part, as follows:

> (A) Fiduciary Liability
>
> The Insurer shall pay Loss on behalf of the Insureds resulting from a Fiduciary Claim first made against the Insureds:
>
> (1) during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act by the Insureds or by any person for whose Wrongful Acts the Insureds are legally responsible . . .

(Ex. A., Fiduciary Liability Coverage Part § I (A).)

24.     "Loss" is defined as certain defense costs and other amounts "that the Insureds are legally liable to pay solely as a result of a Claim covered by this Liability Coverage Part[.]" (Ex. A., Fiduciary Liability Coverage Part § II.)

25.     Under the Fiduciary Liability Coverage Part, "Claim" means any Fiduciary Claim or Settlement Program Notice. (*Id.*)

26.     "Fiduciary Claim" is defined to include a:

> (1) written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand; or
>
> (2) civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading;

(3) criminal proceeding commenced by the return of an indictment; or

(4) formal administrative or regulatory proceeding commenced by the filing or service of a notice of charges, formal investigative order or similar document, including an investigation by the Department of Labor or Pension Benefit Guaranty Corporation or any governmental authority equivalent that is located outside of the United States (including the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto); . . . .

(6) investigation of an Insured Person for a Wrongful Act committed in his or her capacity as a fiduciary of an Insured Plan, commenced by such Insured Person's receipt of a written document identifying him or her as the target of an investigation, including a Wells Notice, target letter or search warrant, but only if received from any governmental authority other than the Department of Labor, Pension Benefit Guaranty Corporation or any governmental authority equivalent thereto that is located outside of the United States (including the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto);

(7) written request upon an Insured Person for witness testimony or document production commenced by the service of a subpoena or similar document which compels such testimony or the production of documents in connection with any matter described in sub-paragraphs (1) through (4) above . . . .

(*Id.*)

27.   The coverage provided under the Fiduciary Liability Coverage Part is subject to certain exclusions, including the following:

(A) The Insurer shall not pay Loss: . . .

(6) in connection with any Claim based upon, arising from, or in any way related to any:

(a) claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or . . .

(c) a Wage and Hour Violation.

(7) of an Insured, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or financial advantage to which such Insured is not legally entitled if a judgment or other non-appealable final adjudication in the underlying action establishes that such a gain did occur; or

(8) of an Insured, based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such Insured if a judgment or other non-appealable final adjudication in the underlying action establishes such an act, omission or violation; provided, however, that this exclusion shall only apply to Insured Entities if a past or present chief executive officer, chief financial officer general counsel or any position equivalent to the foregoing of the Named Entity committed such an act, omission or willful violation.

(*Id.* at Fiduciary Liability Coverage Part § III(A)(6), (7), and (8).)

28.   Section XVI, Application, of the 2021 Twin City Policy provides that:

(A) The Insureds represent that the declarations and statements contained in the Application are true, accurate

- 10 -

and complete.  This Policy is issued in reliance upon the Application.

(B) If the Application contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by the Insurer:

(1) For the purpose of determining coverage under all Coverage Parts other than the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for any Insureds who knew on the Inception Date of this Policy of the facts that were so misrepresented, provided that:

(a) knowledge possessed by any Insured Person shall not be imputed to any other Insured Person; and

(b) knowledge possessed by any chief executive officer, general counsel, chief financial officer, human resources director or any position equivalent to the foregoing of the Named Entity, or anyone signing the Application, shall be imputed to all Insured Entities.  No other person's knowledge shall be imputed to an Insured Entity.

(Ex. A at § XVI(A) and (B).)

**B. Hawbaker's Knowledge of the Criminal Investigation and of Hawbaker's Calculation and Payment of Wage Benefits and Administration of an Insured Plan**

29.    In June 2018, the Commonwealth executed a Search Warrant against Hawbaker, seeking, among other things, (a) plan/trust documents for all benefit plans; (b) summary plan descriptions; (c) notices sent to employees pertaining to all benefit plans; (d) schedule of plan participants and status; (e) correspondence with

plan administrators; (f) annual audit reports of all benefit plans; (g) records for all employees, whether working prevailing wage or non-prevailing wage, of benefits provided and contribution rates for each; (h) documentation of all plan payments and plan costs; (i) complaints submitted by any employee regarding the payment or allocation of prevailing wage fringe benefit funds; and (j) correspondences received from the U.S. Department of Labor or the PA Department of Labor and Industry regarding complaints, investigation, or litigation related to the payment of prevailing wage fringe benefits. (A copy of the Search Warrant, with Affidavit of Probable Cause is attached as Exhibit B.)

30.    Each category of documents sought relates directly to, among other things, Hawbaker's calculation and payment of wage benefits, its wage benefits practices, or administration of an Insured Plan, including with respect to prevailing wage projects that were subject to certain wage and benefit duties under Pennsylvania or Federal law.

31.    The Affidavit of Probable Cause supporting the Search Warrant confirms that: (1) Hawbaker is being investigated for allegations of theft, corrupt organizations, and related offenses; (2) Hawbaker allegedly knowingly and intentionally falsely overstates what it pays to its employees in fringe benefits in order to deprive employees of a portion of their wages; (3) Hawbaker allegedly steals a portion of its employees' wages, thereby committing theft by unlawful

taking, theft by failure to make required disposition of funds received, tampering with public records, and false swearing; (4) Hawbaker allegedly does not make pension contributions in the manner in which it claims to; (5) several Hawbaker employees never received fringe benefits that they were entitled to receive from Hawbaker; and (6) Hawbaker knowingly overstates in its wage certifications that it is spending certain amounts of money to pay for its prevailing wage employees' health, welfare, and pension plans, but then off-sets the hourly cash wages it pays to such employees through submission of false, overstated fringe benefit figures. (Ex. B.) Hawbaker denies receiving a copy of the Affidavit at the time.

32.    As alleged in the Criminal Complaint, in June of 2019, Hawbaker retained a consultant and subsequently changed the way it handled payment of prevailing wage fringe benefit funds. Specifically, the Criminal Complaint alleges that, after retaining the consultant, Hawbaker began contributing pension money earned by prevailing wage workers directly into such workers' individual retirement accounts, as required by applicable state and federal prevailing wage laws. The Criminal Complaint also alleges that, after retaining the consultant, Hawbaker made changes to the method used to calculate hourly health and welfare rates by including in its calculus the actual amount of paid health insurance claims and excluding from its calculus all internal administrative costs, as required by applicable state and federal prevailing wage laws.

33.     Upon information and belief, Hawbaker and the Hawbaker Directors were aware by no later than April 1, 2020 (and likely earlier) that Hawbaker's wage benefit practices and administration of its Insured Plan were subject to a government investigation, were improper, or were reasonably likely to lead to a Claim being asserted against Hawbaker.

34.     In the application for the 2020 Twin City Policy, Hawbaker marked "Yes" to the following question: "Are all plans in compliance with plan agreements and ERISA?"

35.     Also in the application for the 2020 Twin City Policy, Hawbaker marked "No" to the following question: "During the past 24 months, has there been, or is there currently, any investigation by the IRS, DOL . . . or any other State or Federal Agency of any employee benefit plan or any current or former fiduciary of such employee plan?"

36.     Upon information and belief, at the time it submitted the 2020 Twin City Policy application, Hawbaker and the Hawbaker Directors were aware or should have reasonably been aware that (a) Hawbaker's wage benefits practices and the administration of the Insured Plan were subject to a government investigation, were improper, or could reasonably lead to a Claim being asserted against Hawbaker; and (b) the answers to the above questions in the 2020 Twin City Policy application were incorrect.

37.     In the application for the 2021 Twin City Policy, Hawbaker marked "No" to the following question: "Does an applicant . . . have any knowledge or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim?"  The application for the 2021 Twin City Policy was signed by D. Michael Hawbaker on March 15, 2021.

38.     According to the Commonwealth of Pennsylvania, prior to April 8, 2021, Hawbaker officers had already admitted that the company had improperly used prevailing wage benefit funds to pay for general employees, executives, and owners benefits.

39.     Upon information and belief, at the time it submitted its 2021 Twin City Policy application, Hawbaker and the Hawbaker Directors were aware or should have reasonably been aware that (a) its wage benefits practices and the administration of the Insured Plan were subject to a government investigation, were improper, or could reasonably lead to a Claim being asserted against it; and (b) its response to the question above in the 2021 Twin City Policy application was incorrect.

40.     Twin City relied on Hawbaker's respective policy applications in assessing the risk and issuing the 2021 Policy.

C.        **The Criminal Action**

41.      On April 8, 2021, the Pennsylvania Attorney General filed the Criminal Action against Hawbaker, alleging that Hawbaker had stolen fringe benefit funds that were supposed to be paid into prevailing wage workers' pensions and to pay for prevailing wage workers' health and welfare benefits. (A copy of the Criminal Complaint is attached as Exhibit C.)

42.      Specifically, the Criminal Action Complaint alleges that Hawbaker "stole $20,696,453 in fringe benefit funds from prevailing wage workers between September 1, 2015 and December 31, 2018 and used that money to pay for all [Hawbaker] benefits and otherwise to lower the company's costs. [Hawbaker] was required to use that money for the sole benefit of the prevailing wage workers who earned the money, but it failed to do so. Therefore, there is probable cause, for each year between 2015 and 2018, that [Hawbaker] committed the crime of Theft by Failure to Make Required Disposition of Funds Received." (Ex. C, p. 21 of 32.)

43.      On August 2, 2021, Hawbaker entered into a Plea Agreement with the Office of Attorney General. (A copy of the Plea Agreement is attached as Exhibit D.)

44.      Under the Plea Agreement, Hawbaker agreed to plead no contest to four counts of Theft by Failure to Make Required Disposition of Funds Received, 18 Pa.C.S. § 3927(a), based on "conduct in the years 2015-18." (Ex. D., p. 1 of 4.)

45.     As part of the Plea Agreement, Hawbaker was sentenced to serve a concurrent five-year term of probation on each count and to "pay restitution for the charged period in the amount of $20,696,453.00 to affected victims." (*Id.* at p. 3 of 4.)

46.     The Plea Agreement provides Hawbaker "will issue the payments directly to the affected victims, under the supervision of the Corporate Monitor," and that "restitution may be paid in cash or in the form of retirement account contributions" within 120 days of sentencing. (*Id.*)  Hawbaker was also sentenced to reimburse the Office of Attorney General for $240,562.78 for "third-party expert fees incurred as costs of prosecution within 120 days of sentencing." (*Id.*)

**D.     The King Class Action**

47.     On May 6, 2021, Plaintiff James King, on behalf of himself and all others similarly situated, initiated the King Class Action. (A copy of the King Class Action Complaint is attached as Exhibit E.)

48.     The King Class Action Complaint alleges that, among other things, Hawbaker "failed to timely pay all amounts owed for prevailing wage workers retirement benefits as required under Pennsylvania law."  (Ex. E, ¶ 61.)

49.     Specifically, the King Class Action plaintiffs allege that Hawbaker engaged in a "systematic and clandestine scheme of wage abuse and wage and benefit shortages," which involved "failing to pay prevailing wages to hourly

employees working on prevailing wage projects by misrepresenting and misreporting the amounts paid" for "various wage benefits" and that Hawbaker failed to pay prevailing wage workers "all wages earned and owed." (*Id.* ¶¶ 1, 45.)

50.     The King Class Action Complaint further alleges that Hawbaker "designed, implemented and maintained this clandestine scheme from at least 2015 through and including 2018," before the scheme was "finally disclosed publicly on April 8, 2021." (*Id.*)

51.     The King Class Action sets forth causes of action for: (1) breach of contract: failure to pay timely all wages and benefits earned; (2) continuing breach of contract: misappropriated retirement accounts; (3) violation of the Wage Payment and Collection Law; (4) restitution; and (5) unjust enrichment.  (*Id.* at Counts I through V.)

**E.     The Packer Class Action**

52.     On October 13, 2021, Plaintiffs Lester Packer, Sr., Lester Packer II, and Shawn Dyroff, individually and on behalf of the Glenn O. Hawbaker, Inc. Benefit Plan, initiated the Packer Class Action against Hawbaker, the Board of Directors of Hawbaker, the Plan Administrator of the Glenn O. Hawbaker, Inc. Benefit Plan, and

John Does 1-20. (A copy of the Packer Class Action Complaint is attached as Exhibit F.)

53.    The Packer Class Action Complaint alleges that the defendants breached certain fiduciary duties by, among other things, failing to make required contributions to Hawbaker's 401(k) retirement savings plan and other employee benefits plans covered under ERISA. (*See* Ex. F.)

54.    In particular, the Packer plaintiffs allege that between 2015 and 2018, Hawbaker underfunded approximately $5.3 million in health and welfare benefits, which "should have been paid to the prevailing wage workers (including Plaintiffs) either as additional pension contributions or in cash," in violation of applicable state and federal prevailing wage laws.  (Ex. F, ¶¶ 78-79.)

55.    The Packer plaintiffs allege that all "current and former prevailing wage workers" have suffered harm from Hawbaker's "scheme to short and steal the workers' wages and benefits, as the profit sharing and 401(k) plans remain underfunded and the prevailing wage workers all failed to receive all wages earned and owed." (*Id.* ¶ 80).

56.    The Packer plaintiffs allege the following two counts: (a) Count I: breaches of fiduciary duties of loyalty and prudence, as against Hawbaker and the Plan Administrator; and (b) Count II: failure to adequately monitor other fiduciaries, as against Hawbaker and the Board Members. (*Id.* at Counts I and II.)

57.     Count I alleges that Hawbaker and the Plan Administrator breached their fiduciary duties by failing to make required contributions to plaintiffs' individual 401(k) accounts within the appropriate time frame and in the appropriate amounts, in violation of applicable state and federal prevailing wage laws. (*Id.* at Count I.)

58.     Count II alleges that Hawbaker and the Hawbaker Board breached their fiduciary duties by failing to monitor the processes by which Plan contributions were made to participant accounts. (*Id.* at Count II.)

59.     The Packer plaintiffs seek an order requiring the defendants to restore all of defendants' profits to the Plan and to disgorge all profits received from the Plan. (*Id.*)

**E.     The Coverage Dispute**

60.     Hawbaker provided notice of the King Class Action on or about May 19, 2021 and notice of the Packer Class Action on or about October 14, 2021, and seeks coverage for each action under the 2021 Twin City Policy.

61.     Under the 2021 Twin City Policy, the Criminal Complaint, the King Class Action and the Packer Class Action constitute claims based upon, arising from

or in anyway related to the same Wrongful Act or Interrelated Wrongful Acts, and are therefore deemed to be a single Claim.

62.   Twin City issued reservation of rights letters to Hawbaker with respect to each notice, advising that, based on the information then available, there was no coverage for either of the Underlying Class Actions (or for the Criminal Action).

63.   Among other things, the Underlying Class Actions are replete with allegations that Hawbaker violated its duties in the calculation and payment of wages, overtime wages, prevailing wage rates, and benefits, in contravention of governing state and federal prevailing wage laws.

64.   For example, the King Class Action involves allegations that Hawbaker failed to timely pay all amounts owed for prevailing wage workers retirement benefits as required by Pennsylvania law. (Ex. E ¶ 61.)  The Packer Class Action likewise alleges that Hawbaker underfunded the health and welfare component of the total fringe benefits paid between 2015 and 2018 and deprived Hawbaker employees of profit sharing benefits, in violation of applicable state and federal prevailing wage laws. (Ex. F ¶¶ 78-80.)

65.   Such allegations fall squarely within Exclusion III(A)(6) of the 2021 Twin City Policy, which expressly provides that the Policy does not provide coverage for any Claim based upon, arising from, or in any way related to the calculation and payment of wages or any actual or alleged violation of the duties and

responsibilities that are imposed upon an Insured by any federal, state, or local law or regulation that govern wage, hour, and payroll practices, including prevailing wage rates or the calculation and payment of benefits on prevailing wage projects. (Ex. A at Fiduciary Liability Coverage Part § III(A)(6).)

66.     In addition, under Section VII, Defense and Settlements, of the 2021 Twin City Policy, Twin City does not have a duty to defend Hawbaker against any Claim involving allegations, in whole or in part, of a Wage and Hour Violation, which is alleged in the Underlying Class Actions.

67.     To the extent the Search Warrant executed against Hawbaker in June 2018 constitutes a Claim, it is interrelated to the Underlying Class Actions, meaning Hawbaker's Claim first arose prior to the inception of the 2021 Twin City Policy.

68.     Further, upon information and belief, Hawbaker was aware prior to the inception of the 2021 Twin City Policy that it was being investigated for improper wage benefit or Plan practices, that its wage benefits or Plan administration practices were improper, and that the investigation or Hawbaker's wage benefits or Insured Plan administration practices were reasonably likely to lead to a Claim. For example, as explained above, (a) the Search Warrant was executed on Hawbaker in June of 2018; (b) the underfunding of the wage benefits and Plan benefits – which is alleged to have been done knowingly and intentionally by Hawbaker and Hawbaker's executive-level personnel – occurred between September of 2015 through December

of 2018; (c) in June 2019, after being served with the Search Warrant, Hawbaker retained a consultant and subsequently made changes to the ways in which Hawbaker handles payment of prevailing wage fringe benefit funds and calculates hourly health and welfare rates; and (d) according to the Commonwealth, Hawbaker admitted prior to early April 2021 that it had improperly used prevailing wage benefit funds to pay for general employee, executive, and owner benefits.

69.    The 2021 Twin City Policy does not provide coverage for any loss that is not fortuitous or that either has already taken place or is in progress, as is the case here.  Further, there is no coverage under Common Terms and Conditions Section XVI where the Policy Application contains misrepresentations, as appears to be the case here.

70.    The plaintiffs in the Underlying Class Actions seek restitution and the return of improperly withheld funds and benefits, including by alleging that Hawbaker failed to timely pay all wages and benefits to employees under the Prevailing Wage Act and Davis-Bacon Act and misappropriated and underfunded employee benefit plans.

71.    The 2021 Twin City Policy does not provide coverage for restitution or disgorgement.

72.    The Underlying Class Actions allege that Hawbaker deliberately engaged in a fraudulent scheme of wage abuse, which allegations remain pending.

The Packer Class Action plaintiffs also allege that Hawbaker failed to timely pay all wages and benefits due to employees under the Prevailing Wage Act and Davis-Bacon Act, misappropriated and underfunded employee benefit plans, and committed violations of ERISA.

73.    To the extent that a final adjudication already has or later does occur, coverage for the Underlying Class Actions may further be barred, in whole or in part, by Exclusion III(B)(7) of the Fiduciary Liability Coverage Part, which provides that Twin City shall not pay Loss of an Insured, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration, or financial advantage to which such insured is not legally entitled if a judgment or other non-appealable final adjudication in the underlying action establishes that such a gain did occur.

74.    To the extent that a final adjudication already has occurred or later does occur, coverage for the Underlying Class Actions may further be barred, in whole or in part, by Exclusion III(B)(8) of the Fiduciary Liability Coverage Part, which provides that Twin City shall not pay Loss of an Insured based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission, or any willful violation of law by such Insured if a judgment or other non-appealable final adjudication in the underlying action establishes such an act, omission or violation; provided, however, that this exclusion shall only apply to Insured Entities

if a past or present chief executive officer, chief financial officer, general counsel, or any position equivalent to the foregoing of the Named Entity committed such an act, omission, or willful violation.

75.    Hawbaker and the Hawbaker Directors dispute that there is no coverage and continue to assert that there is coverage under the 2021 Twin City Policy Fiduciary Liability Coverage Part for the Underlying Class Actions, making this dispute ripe for declaratory judgment.

## COUNT I: DECLARATORY JUDGMENT

76.    Twin City re-alleges and incorporates by reference each of the allegations set forth above.

77.    There is no coverage for the Underlying Class Actions under the 2021 Twin City Policy for the reasons discussed above.

78.    An actual and justiciable controversy has arisen between the parties to this action regarding the parties' respective rights, duties, and obligations under the 2021 Twin City Policy.

79.    Twin City is entitled to a judicial declaration that there is no coverage for the Underlying Class Actions or related defense costs under the 2021 Twin City Policy.

80.     Twin City is further entitled to a judicial declaration that Twin City has no duty to provide Hawbaker or the Hawbaker Directors with a defense in either of the Underlying Class Actions.

**WHEREFORE**, Twin City respectfully respects that this Court:

(a) Issue declaratory judgment in favor of Twin City, declaring that Twin City does not have a duty to provide any coverage, including any defense, in connection with the Underlying Class Actions;

(b) Award Twin City its costs incurred in this action; and

(c) Grant such other and further relief as may be necessary and appropriate, including all other relief available at law or in equity to which Twin City may be entitled and to which this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Twin City demands a trial by jury on all issues so triable.

Dated:          February 28, 2023          **HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

By:     */s/ Ronald P. Schiller*
Ronald P. Schiller
rschiller@hangley.com
Robert L. Ebby
rebby@hangley.com
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200 (telephone)
(215) 568-0300 (facsimile)
*Attorneys for Plaintiff*
*Twin City Fire Insurance Co*
.