## HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

ATTORNEYS AT LAW / A PROFESSIONAL CORPORATION

One Logan Square
27th Floor
Philadelphia, PA 19103-6933
215.568.0300/facsimile

www.hangley.com

PHILADELPHIA, PA
CHERRY HILL, NJ
HARRISBURG, PA
PLYMOUTH MEETING, PA

**Robert L. Ebby**
**Direct Dial: 215.496.7053**
**E-mail: rebby@hangley.com**

July 6, 2023

**Via ECF**

Chief Judge Matthew W. Brann
U.S. District Court
Middle District of Pennsylvania
U.S. Courthouse and Federal Office Building
240 West Third Street
Suite 218
Williamsport, PA 17701

> **Re:** ***Twin City Fire Insurance Co. v. Glenn O. Hawbaker, Inc., Daniel Hawbaker,***
> ***Patrick Hawbaker, and D. Michael Hawbaker*, Case No. 4:22-cv-01485**

Dear Chief Judge Brann:

Pursuant to the Court's June 28, 2023 Order, Twin City Fire Insurance Company ("Twin City") provides this supplemental letter brief.

**I.     Under the Twin City Policy, the King and Packer Class Actions Are Deemed a Single Claim because They Are Based Upon, Arise From, or in Any Way Relate to the Same Wrongful Act or Interrelated Wrongful Acts**

The King and Packer Class Actions, filed as piggyback actions to the Criminal Complaint that the Office of the Pennsylvania Attorney General filed against Hawbaker, clearly involve the same Wrongful Act and Interrelated Wrongful Acts. As a result, the two actions constitute a single Claim under the Policy, as explained below.

The Twin City Policy provides that "[a]ll Coverage Parts included in this Policy are subject to" to certain "Common Terms and Conditions." (*See* Twin City Policy at Common Terms and Conditions, I(A)). Section X., Interrelationship of Claims, of the Common Terms and Conditions provides that Claims based upon, arising from, or in any way related to the same Wrongful Act or Interrelated Wrongful Acts are deemed to be a single Claim under the Policy. Specifically, the Section X states as follows:

Chief Judge Matthew W. Brann
July 6, 2023
Page 2

> All Claims based upon, arising from or in any way related to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim for all purposes under this Policy first made on the earliest date that:
>
> (A) any of such Claims was first made, regardless of whether such date is before or during the Policy Period;
>
> (B) notice of any Wrongful Act described above was given to the Insurer under this Policy pursuant to the section titled NOTICE OF CLAIM found in the applicable Liability Coverage Part; or
>
> (C) notice of any Wrongful Act described above was given under any prior management liability insurance policy if such notice is accepted under such other policy.

(*Id.* at Common Terms and Conditions, X).

Section II, Common Definitions, of the Twin City Policy sets forth the following relevant definitions:

> "Claim" shall have the meaning specified for such term in each Coverage Part.
>
> "Interrelated Wrongful Acts" means Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, or transaction, or series of causally connected facts, circumstances, situations, events, or transactions.
>
> "Wrongful Act" shall have the meaning specified for such term in each Coverage Part.

Under the Employment Practices Liability coverage part, a Claim is an "Employment Practices Claim," defined, in part, as (1) a civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or (2) a written request to the Insureds to toll or waive a statute of limitations regarding a potential Employment Practices Claim as described above. A "Wrongful Act" under the Employment Practices Liability coverage part is a "breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement."

Under the Fiduciary Liability Coverage Part, a Claim is a "Fiduciary Claim," defined, in part, as a civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading. A "Wrongful Act" under the Fiduciary Liability Coverage Part means, *inter alia*, any actual or alleged: (1) error, misstatement, misleading statement, act, omission, neglect

Chief Judge Matthew W. Brann
July 6, 2023
Page 3

or breach of duty constituting a violation of any responsibilities, obligations or duties imposed upon fiduciaries of an Insured Plan by ERISA or any similar law; or (2) matter claimed against an Insured due to such Insured acting in the capacity of a fiduciary of an Insured Plan. The Policy defines Insured Plan to include, *inter alia*, any past, present, or future: (1) employee welfare benefit plan or employee pension benefit plan, as defined in ERISA; (2) employee benefit plan not subject to ERISA; or (3) group or group type insurance program, or any benefit plan that is not subject to ERISA, including any fringe benefit or excess benefit plan.

### A.      The King and Packer Actions Both Allege the Same Wrongful Acts and Interrelated Wrongful Acts under the Fiduciary Liability Coverage Part

As an initial matter, the King and Packer Class Actions constitute a single Claim because they both allege some of the same Wrongful Acts or Interrelated Wrongful Acts under the Fiduciary Liability Coverage Part. Specifically, the actions are replete with allegations that Hawbaker, among other things, engaged in the following errors, misstatements, misleading statements, acts, omissions, neglect or breach of duty relating to an Insured Plan. By way of example, the operative Complaints allege as follows:

- In the King Class Action, the plaintiffs allege that, instead of contributing pension money earned by prevailing wage workers directly into those workers' individual retirement accounts [*i.e.*, an Insured Plan], as required, Hawbaker "used its prevailing wage workers' contributions to fund all [Hawbaker] pension contributions for all employees, including hundreds of non-prevailing wage employees." (*See* King Class Action Complaint at ¶ 25).

- In Count II of the King Class Action, the plaintiffs allege that Hawbaker misappropriated and underfunded their retirement accounts (*i.e.,* an Insured Plan).

- In the Packer Class Action, the plaintiffs allege that Hawbaker: (1) failed to comply with the terms of the Insured Plan by "failing to make required contributions to Plaintiffs' . . . individual 401(k) accounts within the strict time limitations for making such contributions;" and (2) "failed to monitor and evaluate the performance of the Plan Administrator . . ., standing idly by as the Plan suffered significant losses." (*See* Packer Class Action Complaint at ¶¶ 99, 107).

Under the Fiduciary Liability Coverage Part, these allegations meet the definition of a Wrongful Act – defined, in part, as an act, omission, neglect or breach of duty in the administration of an Insured Plan. Accordingly, under the Policy, the King and Packer Class Actions constitute a single Claim because they both allege the same Wrongful Acts or Interrelated Wrongful Acts.

Chief Judge Matthew W. Brann
July 6, 2023
Page 4

> ### B.     The King and Packer Actions Both Allege the Same Wrongful Acts and Interrelated Wrongful Acts under the Policy Generally

Although the allegations regarding Wrongful Acts under the Fiduciary Liability Coverage Part are dispositive, the King and Packer Class Action allegations regarding Defendants' conduct also constitute the same Wrongful Acts or Interrelated Wrongful Acts under the Policy generally because conduct that constitutes a Wrongful Act under the Employment Liability Coverage Part can be the same Wrongful Act or an Interrelated Wrongful Act for conduct that constitutes a Wrongful Act under the Fiduciary Liability Coverage Part. *See Alexander Mfg., Inc. v. Illinois Union Ins. Co.*, 666 F. Supp. 2d 1185, 1204 (D. Or. 2009) (rejecting insured's argument that, because the directors and officers section and the fiduciary section each separately defined wrongful act, then a wrongful act under one section could not be interrelated with a wrongful act that fell under a different coverage section). That is, Section X of the Common Terms and Conditions applies across both coverage parts, and the definition of Wrongful Act under this Section is not exclusive to the respective Coverage Part but instead encompasses both. This is amply demonstrated by the following:

First, the Policy expressly provides that Section X, Interrelationship of Claims, governs and applies to both the Fiduciary Liability Coverage Part and the Employment Practices Liability Coverage Part. (Policy Common Terms and Conditions § I ("All Coverage Parts included in this Policy are subject to the following Common Terms and Conditions.") *See Alexander Mfg.*, 666 F. Supp. 2d at 1204.

Second, Section X applies and governs "All Claims;" it is not limited to Fiduciary Duty Claims only or Employment Practices Claims only. (*Id.* § X.) *See, e.g. Alexander Mfg.*, 666 F. Supp. 2d  at 1204 ("Specifically, the Trust argues that, assuming that its lawsuit involves interrelated acts, the common claim endorsement does not apply because its ERISA allegations fall solely under the fiduciary coverage section while its derivative causes of action fall under the directors and officers coverage . . . [This] argument is ultimately unpersuasive. The common claim endorsement includes the phrase 'in whole or in part.' Thus, even under the Trust's interpretation, the endorsement applies when the interrelated wrongful acts, at least in part, fall under both the fiduciary and the directors and officers' coverage sections. Moreover, the policy language focuses on acts, not the causes of action that flow from those acts. Here, the interrelated acts—the directors' increased expenditures while hiding the financial condition of the company and the deceptive financial statement—trigger both coverage sections. The fact that those acts gave rise to an ERISA cause of action that falls exclusively under the fiduciary coverage does not mean the common claim endorsement does not apply.").

Third, the Policy expressly provides that the Fiduciary Liability Coverage Part and the Employment Practices Liability Coverage Part operate in tandem and are not separate polices. For example, Endorsement No. 3 provides that if a Claim is covered under more than one Coverage Part, a single Retention will be applied to such Claim. Similarly, Section VIII of the Employment Practices Coverage Part provides that if a Claim is covered under the Employment

Chief Judge Matthew W. Brann
July 6, 2023
Page 5

Practices Coverage Part *and* the Fiduciary Liability Coverage Part, the Loss shall be first covered under the Employment Practices Liability Part.[1]

Under the plain language of the Twin City Policy then, Interrelated Wrongful Acts refer to any Wrongful Acts – whether under the Employment Practices Liability Coverage Part or the Fiduciary Liability Coverage Part – that have as a common nexus any fact, circumstance, situation, event, or transaction, or series of causally connected facts, circumstances, situations, events, or transactions. And as the following examples illustrate, the King and Packer Class Actions allege the same Wrongful Acts or Interrelated Wrongful Acts across the Policy.

- In Count I of the King Class Action, plaintiffs allege that Hawbaker "offered and agreed through its written and oral representations, contracts, policies, promises, and procedures," as "reflected in . . . [Hawbaker's] Employee Handbook," that Hawbaker "would pay the prevailing wage to Plaintiffs . . . on all projects with state and federal government agencies," but failed to do so. Under the Employment Practices Coverage Part, such allegation clearly constitutes a Wrongful Act – defined, in part, as a "breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement."

- The Packer Class Action plaintiffs allege that: (1) Hawbaker made misrepresentations in the Employee Handbook regarding employee benefits; and (2) Hawbaker breached its fiduciary duties in the administration of the Insured Plan.

- Both Class Actions allege that Hawbaker created and submitted "false and misleading fringe benefit letters to each contracting government agency for each project" (*See* King Class Action Complaint at ¶ 20; Packer Class Action Complaint at ¶ 55).

- Both Class Actions allege that the "health and welfare amount reported in the fringe benefit letters . . . bore no relation to the fringe benefit amount listed on the wage determination. Instead, [Hawbaker] concocted a grossly exaggerated health and welfare hourly credit by including inflated health insurance costs and nonqualifying expenses in its health and welfare calculation." (*See* King Class Action Complaint at ¶ 22, Packer Class Action Complaint at ¶ 57).

- Both Class Actions allege that "[w]hile [Hawbaker] boasted that it provided great employee benefits and used that supposed 'fact as a recruiting tool, in actuality, [Hawbaker] was stealing its prevailing wage workers' pension and health and

---

[1] Defendants concede there is no coverage under the Employment Practices Liability Coverage Part.

Chief Judge Matthew W. Brann
July 6, 2023
Page 6

welfare money." (*See* King Class Action Complaint at ¶ 23, Packer Class Action Complaint at ¶ 58).

- Both Class Actions allege that Hawbaker "stole just under $20.7 million of prevailing wage workers' fringe benefit money and used "its prevailing wage workers' contributions to fund all [] profit sharing and 401(k) contributions for all employees." (*See* King Class Action Complaint at ¶¶ 24-25, Packer Class Action Complaint at ¶¶ 59-60).

- Both Class Actions allege that, "[w]hile [Hawbaker] claimed it was funding the profit sharing plan, it was actually using fringe benefit moneys from the prevailing wage workers' wages to foot the bill." (*See* King Class Action at ¶ 26, Packer Class Action at ¶ 61).

- Both Class Actions allege that Hawbaker failed to annualize prevailing wage pension contributions, as required. (*See* King Class Action at ¶ 27, Packer Class Action at ¶ 62).

- Both Class Actions allege that "[i]n its payroll and accounting system, [Hawbaker] allocated half of the total fringe amount listed on the wage determination toward the profit sharing and 401(k) plan. However, instead of paying that money over to the retirement account owned by the worker who earned the money . . ., [Hawbaker] transferred that money into one big, unallocated account . . . Just prior to the end of the first quarter of the following year, that pot of prevailing workers' money was spread out across all [Hawbaker] employees', executives', and owners' retirement accounts." (*See* King Class Action at ¶ 28, Packer Class Action at ¶ 63).

- Both Class Actions allege that, as a result of Hawbaker's theft, "prevailing wage workers were vastly short-changed on the wages they were actually paid, as those cash wages were lowered due to the false representation of fringe benefit amounts that were not actually paid to Plaintiff and similarly situated employees." (*See* King Class Action at ¶ 30, Packer Class Action at ¶ 65).

- Both Class Actions allege that, "[w]hen calculating the hourly cost of providing health benefits, [Hawbaker] used the total amount of claims considered, instead of what it actually paid out, in its Benefits Analysis calculation. By using the total claims considered amount instead of the claims actually paid amount, [Hawbaker] took credit not only for millions of dollars in contractual write-offs that were never paid by anyone, but also for money paid by the prevailing wage workers and other employees in the form of deductibles, copays and employee payroll contributions. Between 2015 and 2018, [Hawbaker] included over $50 million in costs it never paid into the health and welfare calculations. (*See* King Class Action at ¶ 37, Packer Class Action at ¶ 72).

Chief Judge Matthew W. Brann
July 6, 2023
Page 7

As demonstrated above, the King and Packer Class Action allege Wrongful Acts that have "as a common nexus" many of the same facts, circumstances, situations, events, or transactions,[2] with the result that the King and Packer Class Action are deemed to be a single Claim. And, because such Claim is "based upon, aris[es] from, or in any way relates to" allegations of unpaid wages or a Wage and Hour Violations, coverage is precluded in its entirety. (Twin City Policy Fiduciary Liability Coverage Part Exclusion III(A)(6).)

## II.    Fiduciary Liability Coverage Part Exclusion III(A)(6) Does Not Render the Policy's Coverage for ERISA Violations Illusory

Under ERISA, a plan fiduciary has six core affirmative duties: (1) the duty to act prudently; (2) the duty to diversify the assets of the plan; (3) the duty to comply with the provisions of the plan; (4) the duty of loyalty; (5) the duty to pay only reasonable plan expenses; and (6) the duty to not engage in certain prohibited transactions. *See* 29 USC § 1104(a). Below are examples of cases in which ERISA violations were alleged that did not involve claims for unpaid wages or a Wage and Hour Violation, which demonstrate that there is indeed space between Exclusion III(A)(6) and potential coverage for ERISA violations.

The following case examples demonstrate that Exclusion III(A)(6), which bars coverage for "Loss in connection with any Claim based upon, arising from, or in any way related to any claims for unpaid wages or a Wage and Hour Violation," while certainly broad, does not exclude all claims for coverage for ERISA claims and does not render the Policy's coverage for alleged ERISA violations illusory.

➢  *In re Merck & Co., Inc., Securities Derivative & ERISA Litigation, 39 Employee Benefits Cas. (BNA) 1053, 2006 WL 2050577 (D.N.J. 2006)* **(**ERISA supports a claim for failure to disclose a pharmaceutical company's defective and dangerous product, unrelated to any claim for unpaid wages or wage and hour violations). The lawsuit involved allegations of breach of fiduciary duty based on the company's alleged failure to disclose to employees who invested in Merck stock that the company's largest product—the prescription drug Vioxx—posed health risks that would later prompt the company to pull the drug from the market. The court denied Merck's motion to dismiss, concluding that the allegations in the complaint of the adverse financial impact of Merck's withdrawal of Vioxx from the market and the potential liability for injuries attributed to Vioxx met the threshold of presenting a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing sufficient to call into question the fiduciary propriety of continued investment in the company's securities by Plan fiduciaries.

---

[2] As noted earlier, the King and Packer Class Actions are copycat actions to the Criminal Action and allege many of the same Wrongful Acts and Interrelated Wrongful Acts. Accordingly, although Hawbaker does not seek coverage for the Criminal Action, the Criminal Action is still deemed a single Claim with the Class Actions.

Chief Judge Matthew W. Brann
July 6, 2023
Page 8

➢ ***In re Consolidated Welfare Fund ERISA Litig., 839 F. Supp. 1068, 17 Employee Benefits Cas. (BNA) 2241 (S.D. N.Y. 1993)*** (ERISA supports a claim for self-dealing as to plan assets, unrelated to failure to pay wages or commission of wage and hour violation). A health plan trustee was liable for breach of fiduciary duty where he had an interest in firms that sold insurance to the plan and he approved the payment of fees and commissions to that firm.

➢ ***In Wright v. Nimmons, 641 F. Supp. 1391, 7 Employee Benefits Cas. (BNA) 2184 (S.D. Tex. 1986)*** (ERISA supports a claim for self-dealing as to plan assets, unrelated to failure to pay wages or commission of wage and hour violation). A pension plan's trustee violated ERISA's rule prohibiting self-dealing by transferring plan assets to a bank in exchange for the bank's agreement to finance his acquisition of certain closely held corporations that were employer sponsors of the plan for which he acted as trustee.

➢ ***Sandoval v. Simmons, 622 F. Supp. 1174, 6 Employee Benefits Cas. (BNA) 2161 (C.D. Ill. 1985)*** (ERISA supports a claim for self-dealing as to plan assets, unrelated to failure to pay wages or commission of wage and hour violation). An ERISA fiduciary violated his duties of loyalty and was found to have engaged in self-dealing by using plan assets to further his own corporate expansion goals.

➢ ***Leigh v. Engle, 619 F. Supp. 154, 6 Employee Benefits Cas. (BNA) 2321, 85 A.L.R. Fed. 611 (N.D. Ill. 1985)*** (ERISA supports a claim for self-dealing as to plan assets, unrelated to failure to pay wages or commission of wage and hour violation). Fiduciaries violated § 406(b)(1) by using plan assets to purchase shares of securities when the effect of the plan purchase was to allow them to purchase at a lower price due to the absence of one identifiable group of purchasers.

➢ ***Donovan v. Bierwirth, 680 F.2d 263, 271, 3 Employee Benefits Cas. (BNA) 1417 (2d Cir. 1982)*** (ERISA supports a claim for failure to act in the exclusive benefit of the plan, unrelated to failure to pay wages or commission of wage and hour violation). Plan fiduciaries were found to have breached their duty of loyalty by using plan assets to thwart a hostile tender offer directed at the plan's corporate sponsor. Specifically, the fiduciaries' failure to fully investigate financial facts and failure to obtain independent advice constituted a violation of ERISA's exclusive benefit rule.

➢ ***Peabody v. Davis, 636 F.3d 368, 51 Employee Benefits Cas. (BNA) 1462 (7th Cir. 2011)*** (ERISA supports a claim for imprudently remaining heavily invested in non-diversified employer's stock, unrelated to any claim for unpaid wages or wage and hour violations). The plan trustees violated ERISA by retaining closely-held employer stock in a plan sponsor, whose ownership they controlled, when they knew or should have known that it was imprudent to retain the stock in the failing company.

➢ ***Tibble v. Edison Int'l, 575 U.S. 523 (2015)*** (ERISA supports a claim for imprudent investments, unrelated to any claim for unpaid wages or wage and hour violations). Plan fiduciaries violated their duty of prudence by investing in higher cost retail shares.

Chief Judge Matthew W. Brann
July 6, 2023
Page 9

➢ *In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litigation, 842 F. Supp. 2d 614, 52 Employee Benefits Cas. (BNA) 1168 (S.D. N.Y.* **2012**) (ERISA supports a claim for failure to diversify and monitor investments, unrelated to any claims for unpaid wages or wage and hour violations). A mutual fund manager breached fiduciary duties of prudence by exposing plans to excessive risks that were significantly greater than contemplated for the retirement plans and their assets. The fiduciary also breached the duty to diversify plan assets by investing in excessively risky, single asset securities composed of mortgage-based financial derivatives.

➢ *Ramos v. Banner Health, 461 F. Supp. 3d 1067, 1122-25 (D. Colo. 2020*) (ERISA supports a claim for improperly allowing plan assets to be loaned to sponsors or employers who contributed to the plan, unrelated to any claims for unpaid wages or wage and hour violations). ERISA fiduciary violated ERISA by improperly reimbursing a plan sponsor for administrative expenses, particularly where the sponsor did not properly account for all of its reimbursements from plan assets.

➢ *Donovan v Schmoutey, 592 F Supp 1361 (D. Nev. 1984*) (ERISA supports a claim for improperly making loans from plan assets to companies that did not contribute to the plans but that had common ownership ties with companies that contribute to the plan, unrelated to any claims for unpaid wages or wage and hour violations). Plan trustees violated ERISA by failing to exercise their right to accelerate principal and interest on a loan which benefited an individual who had an interest in an entity that made contributions to the pension plan from which the loan was made.

➢ *Maez v. Mountain States Tel. and Tel., Inc., 54 F.3d 1488, 19 Employee Benefits Cas. (BNA) 1283 (10th Cir. 1995*) (ERISA supports a claim against fiduciary for making false representations that current ERISA plan or provision was the best or most advantageous opportunity that employer would offer, unrelated to any claim for unpaid wages or wage and hour violation). Plaintiffs stated a claim for breach of fiduciary duty under ERISA where they alleged that their employer had falsely or recklessly represented that it would not make early separation incentive offers any better than its existing severance plan at a time when it was seriously considering making a better force reduction offer through amendments to its pension plan.

These examples confirm that Twin City Policy Exclusion III(A)(6) would not preclude coverage for any of the ERISA violations discussed above because none involved allegations relating to the calculation and payment of wages, overtime wages, minimum wages, and prevailing wage rates or a Wage and Hour Violation, which requires an alleged violation of federal, state, or law that governs wage, hour and payroll practices (not just a failure to pay benefits). Moreover, the Employment Practices Liability Coverage Part separately excludes coverage for: (1) any claims for unpaid wages (including overtime pay), workers compensation benefits, unemployment compensation, disability benefits, or social security benefits; **(2)** *any actual or alleged violation of . . . ERISA*; and (3) any Wage and Hour Violation, which again demonstrates that a Wage and Hour Violation does not engulf all ERISA claims.

Chief Judge Matthew W. Brann
July 6, 2023
Page 10

Accordingly, the Twin City Policy: (1) precludes coverage for claims for unpaid wages or Wage and Hour Violations under both coverage parts; and (2) precludes coverage for ERISA violations under the Employment Practices Liability Coverage Part. Although Fiduciary Liability Coverage Part Exclusion III(A)(6) broadly excludes any Claim that involves allegations of unpaid wages or a Wage and Hour Violation, this exclusion does not render the Policy's coverage for ERISA claims illusory; on the contrary, it confirms that the Policy **does** cover ERISA violations that are not Wage and Hour Violations, but **does not** provide coverage for a Claim relating to unpaid wages or a Wage and Hour Violation, even if such Claim also involves alleged ERISA violations.

\*\*\*

Respectfully,

Robert L. Ebby

cc:     Jonathan Rudd, Esq. (via ECF)
        Ronald P. Schiller, Esq. (via ECF)
        Marianne Bradley, Esq. (via ECF)