# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TWIN CITY FIRE INSURANCE CO., | No. 4:22-CV-01485 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| GLENN O. HAWBAKER, INC., DANIEL HAWBAKER, PATRICK HAWBAKER, and D. MICHAEL HAWBAKER, | |
| Defendants. | |

## MEMORANDUM OPINION

### AUGUST 31, 2023

Many people believe that they are criminally underpaid. According to the Pennsylvania Attorney General, the prevailing wage employees of Defendant Glenn O. Hawbaker, Inc. ("GOH") might agree. In 2021, the Pennsylvania Attorney General accused GOH of wage theft, alleging that it stole $20.7 million in fringe benefits from its employees. GOH entered into a plea agreement with the Attorney General, agreeing to a restitutionary payment reimbursing the allegedly stolen wages.

In short order, GOH and its Directors, Daniel Hawbaker, Patrick Hawbaker, and D. Michael Hawbaker, ("Director Defendants") found themselves on the wrong end of two class action lawsuits brought by former employees, claiming the underfunding of retirement accounts was a breach of Defendants' fiduciary duties

which resulted in lost interest and investment returns. The Defendants, insured by a Policy that provides coverage for alleged violations of fiduciary duty, notified their insurance company, Plaintiff Twin City Fire Insurance Co., and asked it to defend Defendants in the class actions. Twin City refused, citing provisions that exclude from coverage any claims that arise out of allegations of unpaid wages or benefits.

Twin City then initiated this litigation, asking the Court to issue a declaratory judgment confirming as much. In response, Defendants filed a Counterclaim asking the Court to find that Twin City is required to defend the class actions and that it has breached the insurance agreement by failing to do so. Twin City has moved to dismiss Defendants' Counterclaim. Because Twin City has no obligation to defend or indemnify Defendants from claims arising from unpaid wages or benefits, the Court grants Twin City's Motion and dismisses Defendants' Counterclaims.

## I.   BACKGROUND

### A.   Underlying Facts

#### 1.   The 2021 Insurance Policy

Defendants are Insureds under a Policy issued by Twin City effective from April 1, 2021 to April 1, 2022.[1] The Policy contains three separate coverage parts, including a Fiduciary Liability Coverage Part which the parties agree is the coverage

---

[1]   Am. Countercl., Doc. 26 ¶ 9. Citations to the Amended Counterclaim reference the paragraph numbers that begin on page 26 of Defendants' Answer and Amended Counterclaim. Twin City attached a copy of the Policy to its Complaint and Defendants incorporated that copy by reference in its Amended Counterclaim. *See id.*; Policy, Doc. 24-1.

at issue in this dispute.[2] Determining what is covered by the Policy requires wading through a morass of defined terms and cross-references. The Court accordingly will not recite Policy provisions verbatim, but instead summarize the terms and provisions relevant to the instant dispute.

As part of the Fiduciary Liability Coverage, Twin City has the "duty to defend [covered] **Claims**" and "pay **Loss** on behalf of the **Insureds**" for "a **Wrongful Act** by the Insureds or any person for whose Wrongful Acts the Insureds are legally responsible."[3] Excluded from this duty are Claims which "involve allegations, in whole or in part, of a **Wage and Hour Violation**" or claims for unpaid wages.[4] The Policy also provides that "[a]ll **Claims** "based upon, arising from or in any way related to the same Wrongful Act or **Interrelated Wrongful Acts**" are deemed a single Claim made on the earliest date that any such Claim was first made or notice of any Wrongful Act was given to Twin City.[5]

The Policy and Fiduciary Liability Coverage define the bold terms above as follows:

- A **Claim** is any (1) "written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand"

---

[2]   Am. Compl., Doc. 24 ¶ 18; Am. Countercl. ¶ 10; Policy at 29. The Court uses the page numbers associated with the entire PDF file that makes up Document 24-1 as it consists of several separately paginated "Parts" that cover different types of coverage and other ancillary matters.
[3]   Policy at 14 (duty to defend), 29 (duty to pay Loss).
[4]   *Id.* at 14, 33.
[5]   *Id.* at 16.

or (2) "civil proceeding . . . commenced by the service of a complaint . . . or similar pleading."[6]

- **Loss** means the amount that Insureds are legally liable to pay solely as a result of a Claim and the reasonable legal fees and expenses incurred in the defense or appeal of a Claim.[7]

- **Insureds** includes the GOH, Director Defendants, and any employee welfare or pension benefit plan as defined by ERISA[8] sponsored by GOH for the benefit of GOH employees.[9]

- A **Wage and Hour Violation** is "any actual or alleged violation of the duties and responsibilities that are imposed" on GOH by any law "which govern[s] wage, hour and payroll practices."[10] Such practices include, but are not limited to the calculation and payment of wages and benefits, and the classification of persons or entities for wage and hour purposes.[11]

---

[6]  *See id.* at 9 ("Claim shall have the meaning specified for such term in each Coverage Part."), 29 (Fiduciary Liability Coverage Part defining claim as a Fiduciary Claim), 30-31 (defining Fiduciary Claim).

[7]  *See id.* at 10 (defining Loss as Defense Costs and Damages), 9 (defining Defense Costs and referring to applicable Coverage Part for definition of Damages), 29-30 (Fiduciary Liability Coverage Part defining Damages).

[8]  Employee Retirement Income Security Act of 1974. 29 U.S.C. ch. 18 § 1001 *et seq*.

[9]  *See* Policy at 32 (defining Insured as Insured Entity, Person, or Plan), 31 (defining Insured Person by referring to Manager and Employee and defining Insured Plan), 10 (defining Manager and Employee), 11 (defining Named Entity); Am. Countercl. ¶ 14.

[10]  Policy at 11.

[11]  *Id.* at 11-12.

- A **Wrongful Act** is any actual or alleged "error, misstatement, misleading statement, act, omission, neglect, or breach of duty constituting a violation or responsibilities, obligations or duties imposed upon fiduciaries or an Insured Plan by ERISA or any similar law" or "matter claimed against an Insured due to such Insured acting in the capacity of a fiduciary of an Insured Plan."[12]

- **Interrelated Wrongful Acts** are Wrongful Acts that have as a common nexus any fact or circumstance, or series of causally connected facts or circumstances.[13]

### 2.    The King and Packer Class Actions and Coverage Dispute

In May 2021, James C. King filed a class action lawsuit against GOH in the Court of Common Pleas of Centre County, Pennsylvania (the "King Class Action").[14] The King Class Action plaintiffs allege three state law causes of action: breach of contract as to GOH's failure to pay their wages in a timely fashion (King Count I); breach of contract as to GOH's efforts to misappropriate funds from their retirement accounts (King Count II); violations of the Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (King Count III).[15]

---

[12] *Id.* at 12 ("Wrongful Act shall have the meaning specified for such term in each Coverage Part.") and 32-33 (Fiduciary Liability Coverage Part defining Wrongful Act).

[13] *Id.* at 10.

[14] Am. Countercl. ¶ 23.

[15] King Class Action Compl., Doc. 24-5 ¶¶ 56-62 (Count I); 63-67 (Count II), 68-76 (Count III). The King Class Action plaintiffs also bring alternative quasi-contractual claims for restitution and unjust enrichment. *See id.* ¶¶ 77-88.

In October 2021, Lester Packer Sr., Lester Packer II, and Shawn Dyroff filed a class action lawsuit in this Court against GOH, the administrator of GOH's benefit plan, GOH's Board of Directors, and other unnamed fiduciaries (the "Packer Class Action").[16] The Packer Class Action plaintiffs allege that Defendants breached their fiduciary duties under ERISA in two ways. First, they allege that GOH and GOH's plan administrator breached their duties of loyalty and prudence "by failing to make required contributions to [the plaintiffs'] individual 401(k) accounts within the strict time limitations for making such contributions and in the required amounts . . . in violation of 29 U.S.C. § 1104."[17] Second, the Packer Class Action plaintiffs allege that GOH and its Board breached their fiduciary duties to adequately monitor GOH's plan administrator by failing to monitor the administrator of GOH's benefits plan, the process by which contributions were distributed to plan participants, and failing to remove the inadequately performing plan administrator.[18]

The Classes in both Actions are prevailing wage employees of GOH.[19] Contractors awarded public works projects funded with state or federal funds are required to pay their employees on those projects in accordance with prevailing wage laws.[20] Prevailing wages determinations include an hourly wage and the cash value

---

[16]  Packer Class Action Compl., Doc. 24-6.
[17]  *Id.* ¶ 99.
[18]  *Id.* ¶¶ 106-107.
[19]  King Compl. ¶ 49; Packer Compl. ¶ 83.
[20]  *See* Pennsylvania Prevailing Wage Act ("PWA"), 43 Pa. C.S. Ch. 5; Davis-Bacon Act ("DBA"), 40 U.S.C. § 3141.

of fringe benefits.[21] Fringe benefits include health and welfare benefits, pension or retirement benefits, life insurance, disability, and vacation and holiday pay.[22] The Class Actions both allege that GOH undertook a "scheme to underpay workers" by misrepresenting the value of the fringe benefits.[23] The allegations regarding this scheme are virtually identical and are as follows:[24]

GOH represented it was contributing 50% of the fringe benefit amount to health and welfare benefits and 50% to pension benefits.[25] An investigation by the Office of the Attorney General of Pennsylvania found that, between 2015 and 2018, GOH had overstated the value of the fringe benefits by $20.7 million.[26]

Regarding retirement benefits, the PWA and DBA allow employers to use prevailing wage fringe benefit money to fund retirement contributions.[27] However, GOH was using retirement contributions earned by prevailing wage earners "to fund all GOH pension contributions for all employees, including hundreds of non-prevailing wage employees."[28] Between 2015 and 2018, this resulted in the misappropriation of $15.5 million in prevailing wage workers' retirement contributions.[29]

---

[21]  Am. Countercl. ¶ 24.
[22]  *Id.*
[23]  King Compl. ¶ 20; Packer Compl. ¶ 55.
[24]  *Compare* King Compl. ¶¶ 20-46 *with* Packer Compl. ¶¶ 55-81.
[25]  King Compl. ¶ 21; Packer Compl. ¶ 56.
[26]  King Compl. ¶ 24; Packer Compl. ¶ 59.
[27]  King Compl. ¶ 25; Packer Compl. ¶ 60.
[28]  King Compl. ¶ 25; Packer Compl. ¶ 60.
[29]  King Compl. ¶ 29; Packer Compl. ¶ 64.

GOH also overstated the value of the health and welfare benefits by: (1) misrepresenting the amount paid by GOH for health insurance claims;[30] (2) including ineligible business expenses;[31] (3) including matching 401(k) matching funds;[32] (4) failing to include employee contributions to health insurance premiums;[33] and (5) improperly calculating the value of paid time off.[34] As a result, GOH overstated the value of the health and welfare benefits from 2015 to 2018 by $5.3 million.

GOH should have paid the difference between the stated value of the fringe benefits and the actual value to its prevailing wage employees either in cash or as additional pension contributions.[35] The failure to do so deprived prevailing wage employees of the wages earned, as well as lost interest and growth of their retirement accounts.[36]

Defendants notified Twin City of the King and Packer Class Actions.[37] In October and December 2021, Twin City denied coverage for the Packer and King Class Actions and refused to defend GOH in either lawsuit.[38]

---

[30]   King Compl. ¶ 35-37; Packer Compl. ¶ 70-72.
[31]   King Compl. ¶ 38; Packer Compl. ¶ 73.
[32]   King Compl. ¶ 39; Packer Compl. ¶ 74.
[33]   King Compl. ¶ 40; Packer Compl. ¶ 75.
[34]   King Compl. ¶ 41; Packer Compl. ¶ 76.
[35]   King Compl. ¶ 44; Packer Compl. ¶ 79.
[36]   King Compl. ¶ 45; Packer Compl. ¶ 80.
[37]   Am. Countercl. ¶¶ 60-61.
[38]   *Id.* ¶¶ 62-63.

## B.     Procedural History

Twin City's First Amended Complaint seeks a declaration "that Twin City does not have a duty to provide any coverage, including any defense, in connection with the [King and Packer Class Actions]."[39] Defendants answered the First Amended Complaint and filed an Amended Counterclaim.[40] Defendants' Amended Counterclaim alleges that Twin City breached the Policy by wrongfully denying coverage and/or its duty to defend GOH in connection with the King and Packer Class Actions (Count I).[41] Defendants also seek a judgment declaring that the Policy either requires Twin City to defend Defendants against the King and Packer Class Actions or requires it to advance defense costs to Defendants.[42]

Twin City moves to dismiss Defendants' Amended Counterclaim.[43] Its motion has been fully briefed and is now ripe for disposition.[44]

## II.   LAW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss a counterclaim brought under Rule 12(b)(6), courts apply the same standard

---

[39]   Am. Compl., ¶¶ 76-80 (Count I); *id.* at 26 (prayer for relief).
[40]   *See* Ans. and Am. Countercl.
[41]   *Id.* ¶¶ 65-84 (Count I).
[42]   *Id.* ¶¶ 85-90 (Count II).
[43]   Twin City Mot. to Dismiss Am. Countercl., Doc. 27.
[44]   Separate opposition briefs were filed by GOH (Doc. 29) and the Director Defendants (Doc. 30). Supplemental briefs were filed by Twin City (Doc. 43) and Defendants (Doc. 44) following oral argument (Docs. 40-43).

established by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*[45] and *Ashcroft v. Iqbal*[46] for dismissal of a complaint:[47] the counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[48]

The United States Court of Appeals for the Third Circuit has instructed that, under *Twombly* and *Iqbal*, a court reviewing the sufficiency of a pleading must take three steps: (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they give rise to an entitlement to relief."[49]

## III.   ANALYSIS

### A.   An Insurer's Duty to Defend

The instant insurance dispute is governed by Pennsylvania state law. "A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage."[50] In doing so, a court must

---

[45]   550 U.S. 544 (2007).

[46]   556 U.S. 662 (2009).

[47]   *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F. Supp. 3d 725, 732, (E.D. Pa. 2020) (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011)).

[48]   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[49]   *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[50]   *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997) (citing *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808 (3d Cir. 1994)).

"ascertain the intent of the parties as manifested by the language of the written instrument," construing the contract "in accordance with the plain meaning of [its] terms."[51] If the language of a policy is clear and unambiguous, the Court must enforce that language; ambiguous language, however, must be construed against the insurer and in favor of the insured.[52]

"After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage."[53] "It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured."[54] Under that approach, the "question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."[55] This principle, known as the four-corners rule, holds that "[a]n insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy."[56] Pennsylvania provides for no exception to this rule.[57]

---

[51] *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011).

[52] *Id.* at 321.

[53] *Allen*, 692 A.2d at 1095.

[54] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).

[55] *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018) (internal quotation marks omitted) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)).

[56] *Jerry's Sport Ctr.*, 2 A.3d at 541 (citations omitted).

[57] *Lupu*, 903 F.3d at 391 (quoting *Burchick Constr. Co., Inc. v. Harleysville Preferred Ins. Co.*, 2014 WL 10965436, at *8 (Pa. Super. 2014)).

### B.   Wage and Hour Violations

Twin City first argues that it has no duty to defend Defendants or cover their losses in the King and Packer Class Actions because those actions are Wage and Hour Violations, which are excluded from both Twin City's coverage and defense responsibilities.[58] Twin City's basis for arguing that the King and Packer Class Actions are Wage and Hour Violations is that the Class Actions involve allegations that Defendants:

(1) failed to provide employees with certain fringe benefits to which they were entitled, in violation of applicable law;

(2) failed to timely pay all amounts owed for prevailing wage workers retirement benefits, as required by Pennsylvania law;

(3) underfunded the health and welfare component of the total fringe benefits paid between 2015 and 2018;

(4) improperly spread out fringe amounts among all [GOH's] employees', executives', and owners' retirement accounts, instead of paying those fringe amounts directly over to the retirement account owned by the prevailing worker who earned the money; and

(5) failed to make contributions to prevailing workers' individual 401(k) accounts in the amounts required by law.[59]

Defendants respond that the Packer Class Action does not involve Wage and Hour Violations because it involves only claims that Defendants breached their fiduciary duties.[60] As for the King Class Action, Defendants acknowledge that King Counts I and III involve Wage and Hour Violations but direct the Court's attention

---

[58]   Twin City MTD Br., Doc. 28 at 11-12.
[59]   *Id.* at 11-12 (internal quotation marks and citations omitted).
[60]   GOH Resp., Doc. 29 at 8.

to King Count II, which seeks damages for retirement payments GOH failed to make as required by GOH's retirement plan and the loss of interest therefrom.[61] Defendants argue that Count II of the King Class Action complaint is not a Wage and Hour Violation or, in the alternative, that the Policy is ambiguous because the scope of the Policy's exceptions appears to exclude coverage that other provisions expressly provide for.[62] In reply, Twin City accuses Defendants of torturing the language of the Policy to create ambiguities where none exist.[63]

The definition of Wage and Hour Violation reads in full:

Wage and Hour Violation means any actual or alleged violation of the duties and responsibilities that are imposed upon an Insured by any federal, state or local law or regulation anywhere in the world, including but not limited to the Fair Labor Standards Act or any similar law (except the Equal Pay Act), which govern wage, hour and payroll practices. Such practices include but are not limited to:

1) the calculation and payment of wages, overtime wages, minimum wages and prevailing wage rates;
2) the calculation and payments of benefits;
3) the classification of any person or organization for wage and hour purposes;
4) reimbursing business expenses;
5) the use of child labor; or
6) garnishments, withholdings and other deductions from wages.[64]

The clauses "that are imposed upon an Insured by any . . . law" and "which govern wage, hour and payroll practices" are relative clauses. "A relative clause is a

---

[61]   *Id.*
[62]   *Id.* at 8, 18-19.
[63]   Twin City Reply, Doc. 31 at 9-10.
[64]   Policy at 11-12.

subordinate clause that is introduced by a relative pronoun"—the pronouns "that" and "which" in this case—"and modifies the noun element (or sentence or clause) it follows."[65] "[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."[66] Applying this principle, known as "the last antecedent rule," the "any law" clause modifies "duties and responsibilities," and the "wage, hour, and payroll" clause modifies the "any law" clause.[67]

There is also the issue of what to do with the reference to "the Fair Labor Standards Act or any similar law (except the Equal Pay Act)." One reading is that this language is surplusage; just another way of identifying laws which govern wage, hour, and payroll practices. However, Pennsylvania law is clear that words in a contract should not be treated as surplusage "if any reasonable meaning consistent with the other parts can be given to it."[68]

Applying these principles, the Court finds that the definition of Wage and Hour Violation can be reasonably read as:  A violation of duties imposed by laws that are similar to FLSA and govern wage, hour, and payroll practices. Not only is

---

[65] *Long v. Transamerica Life Ins. Co.*, 2019 WL 13167365, at *2 (M.D. Pa. July 15, 2019) (quoting Bryan A. Garner, The Chicago Manual of Style § 5.26 (17th ed. 2017)).

[66] *First Liberty Ins. Co. v. McGeehan*, 381 F. Supp. 3d 478, 483 (W.D. Pa. 2019) (citing *Lockhart v. United States*, 577 U.S. 347, 351 (2016); Black's Law Dictionary 1532-33 (10th ed. 2014); and A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012)).

[67] *See Penn Psychiatric Ctr. v. United States Liab. Ins. Co.*, 257 A.3d 1241, 1251 (Pa. Super. Ct. 2021) (collecting cases).

[68] *Gen. Refractories Co. v. First State Ins. Co.*, 94 F. Supp. 3d 649, 661 (E.D. Pa. 2015) (citing *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 276 (Pa. Super. Ct. 2014); *Tenos v. State Farm Ins. Co.*, 716 A.2d 626, 631 (Pa. Super. Ct. 1998)).

this reading consistent with how courts have interpreted similar provisions,[69] it is also consistent with how Twin City initially characterized the provision in its briefing: "The Twin City Policy defines Wage and Hour Violation as any alleged or actual violation of the duties imposed upon an Insured by any law or regulation that governs wage, hour and payroll practices."[70]

### 1.   ERISA

In an order scheduling oral argument, the Court observed that the broad scope of the Wage and Hour Violation exclusion appears to render the Policy's coverage of ERISA violations illusory.[71] Wage and Hour Violations are "any actual or alleged violation of the duties and responsibilities that are imposed on an Insured by any [law] which govern wage, hour, and payroll practices" including "the calculation

---

[69]   *See, e.g.*, *Cal. Diaries Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023 (E.D. Cal. 2009) (comparing provisions of FSLA and state law where coverage excluded violations of FSLA and "other similar provisions of" law); *TriTech Software Sys. v. U.S. Specialty Ins. Co.*, 2010 WL 5174371, at *6 (C.D. Cal. Dec. 13, 2010) ("The word 'similar' avoids the need to catalog every state and local law that is similar to FLSA, which would be inefficient, and further puts insureds on notice that the Policy excludes coverage for violations of state labor laws similar to the FLSA.") (collecting cases).

[70]   Twin City MTD Br. at 11. *See also* Twin City Reply at 6 ("Wage and Hour Violation is defined to include any actual or alleged violation of federal, state, or local law or regulations regarding" wage, hour, and payroll practices.).

The Court notes that this reading, and the parties' arguments generally, does treat the reference to the Fair Labor Standards Act as surplusage. Though it may conflict with established principles of contract interpretation, *see supra* note 69, the Court will therefore confine its analysis to the reading(s) of the provision advanced by the parties. *See Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 690 (W.D. Pa. 2008) (observing that a Court interpreting an insurance policy must give effect to the reasonable expectations of the insured) (collecting cases).

[71]   Order Scheduling Oral Arg., Doc. 40, 4-7.

and payments of benefits."[72] ERISA is a law that governs employment benefits.[73] However, the Policy also requires Twin City to defend and cover Losses from civil actions arising from actions Defendants took in their capacities as fiduciaries of the GOH benefits plan and any breaches of fiduciary duties imposed on Defendants with respect to the GOH benefits plan by ERISA or any similar law.[74]

In its supplemental brief filed after oral argument, Twin City argued that the Wage and Hour Violation exception, "while certainly broad, does not exclude all claims for coverage for ERISA claims and does not render the Policy's coverage for alleged ERISA violations illusory."[75] In support, Twin City cites cases in which, according to Twin City, ERISA violations are alleged that "did not involve claims for unpaid wages or a Wage and Hour Violation, which demonstrates that there is indeed space between Exclusion III(A)(6) and potential coverage for ERISA violations."[76] Defendants argue that Twin City's interpretation of the exclusion would encompass the Policy's coverage for ERISA violations because almost any ERISA claim will involve benefits.[77] In support, they refer to recent litigation to which Twin City was a party in the Central District of Illinois where that court

---

[72] Policy at 11-12.
[73] *See* 29 U.S.C. § 1002(3).
[74] *See* Policy at 32-33.
[75] Twin City Supp. Br., Doc. 43 at 7.
[76] *Id.*
[77] Defs.' Supp. Br., Doc. 44 at 12-13.

rejected Twin City's interpretation of an exclusion as "overbroad" and "serv[ing] to defeat the bargained-for coverage."[78]

After the Court raised whether this broad exclusion rendered the ERISA coverage illusory, Twin City suggested that the violations themselves must "involve claims for unpaid wages," and not merely be a violation of any provision in a wage and hour law.[79] Twin City notes that a plan fiduciary has six core affirmative duties under ERISA:

> (1) the duty to act prudently; (2) the duty to diversify the assets of the plan; (3) the duty to comply with the provisions of the plan; (4) the duty of loyalty; (5) the duty to pay only reasonable plan expenses; and (6) the duty to not engage in certain prohibited transactions.[80]

Twin City suggests that some of these duties implicate the calculation and payment of benefits, and some do not, but does not distinguish which are which.[81] Instead, Twin City cites to a dozen examples of cases that it says illustrate the point because they do not include claims for unpaid wages or a Wage and Hour Violation.[82] Twin City's cited examples do not provide any clarity.

First, Twin City says the provided examples demonstrate that the Wage and Hour Violation exclusion does not reach every ERISA violation because each

---

[78] *Id.* (quoting *Twin City Fire Ins. Co. v. Alcast Co.*, -- F. Supp. 3d ---, 2023 WL 3743886, at *14 (C.D. Ill. Apr. 28, 2023).

[79] *See* Twin City Supp. Br. at 7.

[80] *Id.* (citing 29 U.S.C. § 1104(a)).

[81] Oral Arg. Tr., Doc. 46 at 25:12-24; Twin City Supp. Br. at 7.

[82] Twin City Supp Br. at 7-9.

example is "unrelated to a wage and hour violation."[83] This is circular reasoning and says nothing about what a Wage and Hour Violation is. Second, Twin City concludes by asserting that none of the examples "involved allegations relating to . . . a Wage and Hour Violation, which requires an alleged violation of federal, state, or [local] law that governs wage, hour and payroll practices (*not just a failure to pay benefits*)."[84] However, the definition of Wage and Hour Violation expressly provides that "wage, hour, and payroll practices include . . . *the calculation and payment of benefits*."[85]  To the extent Twin City argues certain ERISA violations are not Wage and Hour Violations because the underlying conduct does not deal with the calculation and payment of wages, that argument is also unavailing. Wage and Hour Violation is defined by violations of certain laws, not certain courses of conduct.[86] To that end, each of the six ERISA duties identified by Twin City are implicated in its list of non-Wage and Hour ERISA Violations.[87]

Finally, Twin City argues that the Employment Practices Liability Coverage Part exclusion for "(1) any claims for unpaid wages (including overtime pay), workers compensation benefits, unemployment compensation, disability benefits, or

---

[83]  *See id.* 7-9.
[84]  *Id.*. at 9 (emphasis added).
[85]  Policy at 11-12 (emphasis added).
[86]  *Cf.* Oral Arg. Tr. at 38:3-7 ("So it's not simply if there's an allegation, I didn't get my benefits, then we're in a Wage and Hour Violation. A Wage and Hour Violation you have to have a specific law that you're claiming has been violated when you didn't get paid what you wanted to get paid."); Twin City Reply at 5 (observing that "[a] Claim is not determined by looking to the 'underlying wrong or wrongs' alleged, but rather to how the policy defines a 'Claim'").
[87]  *See generally* Twin City Supp. Br. at 7-9.

social security benefits; **(2) *any actual or alleged violation of . . . ERISA*; and** (3)

any Wage and Hour Violation" shows that a Wage and Hour Violation does not

engulf all ERISA claims.[88] This argument "overlooks the fact that insurance policies

often use overlapping provisions to provide greater certainty on the scope of

coverages and exclusions."[89]

At oral argument, Twin City implicitly acknowledged the overbreadth of the

Wage and Hour Violation language, suggesting that ERISA "doesn't fit nicely into"

laws that govern "wage, hour, and payroll practices."[90] On this point, the Court

agrees. But Twin City cannot both disclaim and benefit from their attempt to expand

wage and hour practices beyond its ordinary meaning.[91] Therefore, the Court finds

that Wage and Hour Violations do not include alleged violations of ERISA or any

similar law.[92]

---

[88] *Id.* at 9.

[89] *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 311 (7th Cir. 2021) (collecting cases).

[90] Oral Arg. Tr. at 25:8-11.

[91] The Court also notes that laws regarding the use of child labor or the reimbursement of business expenses are also and awkward fit for a provision regarding wage and hour practices. *See Cal. Diaries*, 617 F. Supp. 2d at 1045 (observing that statutory provisions regarding the reimbursement of business expenses are not similar to FLSA). Though those provisions are not at issue here, they are similarly illustrative of the issues that arise by attempting to broaden the scope of wage and hour laws beyond its ordinary meaning as Twin City has attempted to.

[92] *See* Policy at 32-33 (defining Wrongful Act as actual or alleged violations of "ERISA or any similar law").

### 2.    PWA and DBA

Twin City observes that the Class actions are "replete with allegations of [non-ERISA] Wage and Hour Violations."[93] Defendants acknowledge that Counts I and III of the King Class Action involve allegations of Wage and Hour Violations. As discussed above, the key inquiry in determining whether there have been allegations of a Wage and Hour Violation is whether there have been allegations of a violation of a wage and hour law. As Defendants concede that the alleged violations of the PWA and DBA in King Count I are Wage and Hour Violations, the Court assumes that the PWA and DBA are laws within the scope of Wage and Hour Violation.[94]

King Count II includes allegations that GOH's underfunding of benefit accounts "continues to harm the retirement accounts of [King] and the Class and continues to deprive them of interest, earnings, and investment returns they would have and should have received."[95] "In the alternative, [GOH] was required by the PWA and the DBA to pay in cash wages the difference between its actual fringe benefit costs and the prevailing wage determination associated with each public agency contract covered by the PWA and the DBA."[96]

Defendants argue that Count II, despite including allegations of PWA and DBA violations, does not include allegations of Wage and Hour Violations. As

---

[93]  *See* Twin City MTD Br. at 11-12.
[94]  *See supra* n.70 (citing *Whole Enchilada*, 581 F. Supp. 2d at 690).
[95]  King Compl. ¶ 66.
[96]  *Id.* ¶ 67.

discussed in greater detail below, Defendants argue that the claims for unpaid benefits or wages are mooted by the restitutionary payment made under GOH's Plea Agreement.[97] Therefore, Defendants argue that the only allegations at issue in Count II are those regarding lost interest and investment returns, effectively reading out of King Count II the PWA and DBA allegations.[98]

As explained below, the Court does not agree that the allegations of failure to pay benefits and the allegations regarding lost interest can be separated for the purposes of this insurance dispute. However, the Court notes argument is consistent with the PWA and the DBA falling within the definition of Wage and Hour Violation.

### C.    Claims and Wrongful Acts

Under the Policy, "all Claims based upon, arising from, or in any way related to the same Wrongful Acts or Interrelated Wrongful Acts shall be deemed to be a single Claim for all purposes."[99] Excluded from Twin City's duty to defend Claims are "any Claim involving allegations, in whole or in part, of a Wage and Hour Violation."[100] The Policy also provides that Twin City "shall not pay Loss in connection with any Claim based upon, arising from, or in any way related to any Wage and Hour Violation."[101]

---

[97]   GOH Resp. at 8.
[98]   *See id.* at 9.
[99]   Policy at 16.
[100]   *Id.* at 14.
[101]   *Id.* at 33.

Twin City argues that "the King and Packer Class Actions constitute a single Claim because they both allege the same Wrongful Acts or Interrelated Wrongful Acts."[102] Twin City also argues that, even if the Class Actions include allegations of wrongful acts other than unpaid wages or Wage and Hour Violations, those allegations are still related to unpaid wages or Wage and Hour Violations.[103] Twin City emphasizes that, under the Policy, Claim refers to the entire civil proceeding.[104] Therefore, if the Class Actions include allegations of unpaid wages or Wage and Hour Violations, there is no coverage for the Class Actions.

Defendants argue that "each claim must be analyzed on its own for purposes for determining if there is coverage and the applicability of exclusions."[105] Defendants also argue that the Packer Class Action and Count II of the King Class Action do not involve any claims for unpaid wages or Wage and Hour Violations.[106] Defendants note that the King and Packer Class Action plaintiffs "have already received the wages and benefits to which they were deemed entitled by virtue of the restitutionary payment made pursuant to GOH's Plea Agreement" with the Attorney General.[107] Defendants therefore reason that the only damages "truly at issue in the [King and Packer Class Actions] is the alleged loss of interest, earnings and

---

[102]  Twin City Supp. Br. at 3.
[103]  Twin City MTD Br. at 14-16.
[104]  *Id.*
[105]  Defs.' Supp. Br. at 4.
[106]  GOH Resp. at 8.
[107]  *Id.* at 8.

investment returns on the retirement account balances."[108] Defendants contend that claims for lost interest, earnings, and investment returns are not Wage and Hour Violations and accordingly covered by the Policy.[109] Further, Defendants argue that, to the extent that the Class Actions include allegations relating to unpaid wages or Wage and Hour Violations, that does not preclude coverage for allegations which would ordinarily be covered.[110] Separately, Director Defendants argue that the claims brought against them in the Packer Class Action are "based exclusively on the alleged failure to perform fiduciary monitoring duties."[111]

### 1.    Multiple Claims and Multiple Suits

The Court is not persuaded by Twin City's argument that Claim refers to "the entire 'written demand' or 'civil proceeding' and not separately to the individual allegations set forth within such 'written demand' or 'civil proceeding.'"[112] As an initial matter, the authority Twin City cites in support, *Westport Ins. Corp. v. Mylonas*, expressly reserved "decid[ing] whether a single suit involving truly separate losses . . . would still be a single claim."[113]

Such a reading of the definition of Claim would also conflict with various provisions in the Policy. For example, the Policy expressly contemplates the

---

[108]  *Id.* at 9.
[109]  *Id.*
[110]  *See id.* at 12-17.
[111]  Director Defs.' Resp. at 10.
[112]  Twin City MTD Br. at 14-15.
[113]  704 F. App'x. 127, 130 n.4 (3d Cir. 2017).

allocation of Losses and Defense Costs between covered and non-covered claims in the same suit.[114] Also, as noted by Twin City, the Employment Practices Liability Coverage Part expressly excludes coverage for ERISA violations.[115] An insured facing a suit that alleged both workplace harassment and an ERISA violation would have to choose between bringing an Employment Practices Claim or a Fiduciary Liability Claim under Twin City's interpretation.[116] Instead, an insured in that situation has two separate Claims which are then deemed a single Claim, provided they arise from the same Wrongful Act or Interrelated Wrongful Acts.[117]

Further, the strict reading of the definition of Claim that Twin City offers cuts both ways. If a Claim is the entirety of a singular civil proceeding, then separate civil proceedings, even those arising from the same Wrongful Acts, would have to be two separate Claims.[118] The number of Claims is not determined by the rules of pleading or by how many suits are filed.[119]

---

[114]  Policy at 16.

[115]  *Cf.* Twin City Supp. Br. at 9.

[116]  Policy at 23-24 (defining Employment Practices Claim); *id.* at 30-31 (defining Fiduciary Liability Claim); *cf.* Twin City Supp. Br. at 4-5 (acknowledging that a single Claim can be covered by both the Employment Practices and Fiduciary Liability Coverage Parts).

[117]  Policy at 16.

[118]  *Cf. id.* at 16 ("All Claims based upon, arising from, or in any way related to the same Wrongful Act of Interrelated Wrongful Acts shall be deemed to be a single Claim . . .").

[119]  *See Mylonas*, 704 F. App'x. at 131 (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.* 855 P.2d 1263, 1265 (Cal. 1993); *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 500 n.8 (3d Cir. 2002)).

### 2.    Relatedness

Twin City agrees that the allegations in the Class Actions that Defendants breached their fiduciary duties by underfunding the retirement accounts of prevailing wage employees are Wrongful Acts that, absent an exclusion, are covered by the policy.[120] Defendants agree that the allegations in the King Class Action that GOH failed to timely pay all wages and benefits earned by prevailing wage employees are Wage and Hour Violations.[121] The Policy states that Twin City "shall not pay Loss in connection with any Claim based upon, arising from, or in any way related to any Wage and Hour Violation."[122] The Policy also provides that "[f]or any Claim involving allegations, in whole or in part, of a Wage and Hour Violation, it shall be the duty of [Defendants], and not [Twin City], to defend such Claim."[123] The question then is whether the Wrongful Acts are "based upon, arising from, in any way related," or "involve[e] . . . in whole or in part" the Wage and Hour Violations.

Pennsylvania law is well settled that "arising out of" requires "but for" causation.[124] King Count II alleges that "failing timely to deposit the amounts earned and owed to the retirement accounts of prevailing wage workers . . . has deprived and continues to deprive Plaintiff and the Class of interest, earnings and investment

---

[120] *See* Twin City Supp. Br. at 3 ("Under the Fiduciary Liability Coverage Part, these allegations meet the definition of a Wrongful Act . . .").

[121] *See* GOH Resp. at 12 (". . . Counts I and III of the King Action Complaint involve claims for wage and hour violations . . .").

[122] Policy at 33 (cleaned up).

[123] *Id.* at 14.

[124] *Gen. Refractories.*, 855 F.3d at 159 (collecting cases).

returns that otherwise would have been received in the absence of [GOH]'s scheme."[125] Both Packer Counts allege that the failure to make the required contributions to retirement accounts resulted in "millions of dollars in losses due to excessive costs and lower net investment returns."[126] In other words, but for Defendants' alleged scheme to underpay its prevailing wage employees, the employees' retirement plans would have earned additional interest and returns. Therefore, there is no coverage under the Policy.

Further, a finding of no coverage in this case is consistent with the purpose of wage and hour exclusions, which is to avoid the "moral hazard" created by an incentive to violate wage and hour laws and offload the cost to the insurer.[127] It is of little significance that GOH has made a restitutionary payment to the Class Action Plaintiffs. The temptation to violate wage and hour laws would still exist if the only consequence was to pay restitution and employers could externalize any subsequent liabilities.[128]

Defendants advance several arguments that fiduciary duty claims in the Class Actions are covered under the Policy:

---

[125]  King Compl. ¶ 65.
[126]  Packer Compl. ¶ 100; *see id.* ¶¶ 103-109.
[127]  *Admiral Ins. Co.*, 82 F. Supp. 3d at 1180 (citing *Farmers Auto Ins. Ass'n v. St. Paul Mercury Ins. Co.*, 482 F.3d 976, 978-79 (7th Cir. 2007)).
[128]  *See E.H. Summit, Inc. v. Carolina Cas. Ins. Co.*, 2016 WL 7496142, at *6 n.4 (C.D. Cal. Feb. 24, 2016).

*First*, Defendants argue that the Class Action Plaintiffs' claims for wages or benefits have been mooted, either by the restitutionary payment made by GOH as part of a plea agreement or the applicable statute of limitations.[129] Therefore, "the only amount truly at issue in the Underlying Actions is the alleged loss of interest, earnings, and investment returns on the retirement account balances."[130] Defendants suggest that the Class Action Plaintiffs are "asserting fiduciary liability claims since they realize there is a significant risk that any wage and hour claim will likely be precluded or otherwise time-barred."[131] Whether there is coverage under the Policy depends on the facts alleged in the Class Action Complaints, not the legal theories or how the plaintiffs frame their requests for relief.[132] Whether King and Packer assert wage and hour claims or the viability of such claims is the wrong inquiry. The correct inquiry is whether the claims that King and Packer did bring arose from Wage and Hour Violations.

*Second*, Defendants argue that "Twin City is requesting the Court determine at the motion to dismiss stage that there is no legal exposure for the fiduciary liability claims and 100% of the legal exposure is for the wage and hour violation claims."[133]

---

[129] GOH Resp. at 8-9.

[130] *Id.* at 9.

[131] *Id.*; *see also* Dir. Defs.' Resp. at 10-11 (arguing that claims brought by Packer against the Director Defendants are covered by the Policy because they do not include claims for wages and benefits).

[132] *Nautilus Ins. Co. v. Motel Mgmt. Svcs., Inc.*, 320 F. Supp. 3d 636, 640 (E.D. Pa. 2018) (citing *QBE Ins. Corp. v. Walters*, 148 A.3d 785, 788 (Pa. Super. Ct. 2016); *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)).

[133] GOH Resp. at 16; *see also* Dir. Defs.' Resp. at 11 (arguing that there are "factual issues as to what relief is being sought by the Packer Action Plaintiffs" from the Director Defendants).

Defendants aver that dismissal at the Rule 12 stage is inappropriate because the relative exposure between the two claims is a factual issue. In support, Defendants note that cases dealing with the "relative legal exposure" between claims in underlying litigation are typically resolved "at a later stage, such as summary judgment."[134] However, a determination regarding the relative legal exposure between claims is only relevant where there are covered claims and uncovered claims. Here, the relative exposure between the fiduciary liability claims and the wage and hour claims is irrelevant; none of the claims are covered so 100% of the legal exposure is for uncovered claims.

*Third*, and related to the above, Defendants point to *Dobson v. Twin City Fire Ins. Co.*, a similar case in which the Ninth Circuit held that there was coverage for a breach of fiduciary duty claim despite there not being coverage for ten claims of fraud brought in the same suit.[135] Defendants suggest that this is the same case; there are uncovered (wage and hour) claims and covered (fiduciary duty) claims. However, this case differs in one key respect: there were no alleged Wage and Hour Violations in *Dobson*. As Defendants note, the insured in *Dobson* "was sued in an eleven-count complaint related to alleged fraudulent transfers in conjunction with a leveraged buyout transaction."[136]

---

[134]  GOH Resp. at 17 n.3.
[135]  Defs.' Supp. Br. at 4-7 (citing *Dobson v. Twin City Fire Ins. Co.*, 2012 WL 27908392 (C.D. Cal. Jul. 5, 2012), *rev'd* 590 F. App'x. 687 *on remand* (9th Cir. 2015), *remanded to* 2015 WL 12698443 (C.D. Cal. Aug. 5, 2015).
[136]  *Id.* at 4-5.

*Fourth*, Defendants argue that Exclusion III(B) of the Fiduciary Liability Coverage Part makes clear that, though there is no coverage for the payment of benefits, there is coverage for "a change in the value of the investments held by such Insured Plan, regardless of whether the amounts sought in such Claim are characterized by plaintiffs or held by a court to be benefits due or damages for breach of fiduciary duty."[137] "[E]xceptions to policy exclusions cannot create or expand insurance coverage."[138] Because the Court has found that there is no coverage under the Policy, it need not consider whether any of the Policy's exclusions (or exceptions thereto) apply.[139]

## IV.   CONCLUSION

Though the Court agrees with Defendants that the definition of Wage and Hour Violation conflicts with the Policy's Fiduciary Liability coverage, this ambiguity does not completely vitiate the Policy's exclusions for Claims arising out of such Violations. Excluding violations of ERISA or any similar law from Wage and Hour Violations does not obligate Twin City to defend or indemnify Defendants for such violations that *arise* out of other violations that are unambiguously Wage and Hour Violations, such as the failure to pay wages. Defendants concede that the alleged theft of wages and benefits are Wage and Hour Violations. The alleged violations of fiduciary duties arise out of that alleged wage theft. Therefore, the

---

[137] Defs.' Supp. Br. at 19.
[138] *Unitrin Direct Ins. Co. v. Esposito*, 751 F. App'x. 213, 215 (3d Cir. 2018) (collecting cases).
[139] *Id.*

alleged violations of fiduciary duties fall squarely within the Policy's exclusions for such Claims.[140]

The Court notes that, having dismissed Defendants' Counterclaims, the only live issue in this case is Twin City's request for a declaratory judgment that it is not required to indemnify or defend Defendants in the King and Packer Class Actions.[141] The foregoing reasoning and findings, if not dispositive, would necessarily bear on an evaluation of Twin City's requested relief. The parties are encouraged to confer as to how they and the Court may efficiently reach a resolution of this matter. A separate Order scheduling a Status Conference will follow.

For the foregoing reasons, the Court **GRANTS** Twin City's Motion and dismisses Defendants' Counterclaims. Further, because the Court's interpretation of the Policy's coverage is a question of law and no amendment would affect the pleadings of the King and Packer Class Actions, dismissal of Defendants' Counterclaims is with prejudice.

---

[140] Because the Court finds that Twin City is not required to defend or indemnify Defendants in the Class Actions, it does not address Twin City's argument that Defendants' Claim is barred because it arose before the Policy inception and by the Known Loss Doctrine. *See* Twin City Reply Section A.

[141] FAC Count I.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge