IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TWIN CITY FIRE INSURANCE CO., | No. 4:22-CV-01485 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| GLENN O. HAWBAKER, INC., DANIEL HAWBAKER, PATRICK HAWBAKER, and D. MICHAEL HAWBAKER, | |
| Defendants. | |

MEMORANDUM OPINION

DECEMBER 19, 2023

## I.   BACKGROUND

### A.   Factual Background[1]

This suit arises out of an insurance coverage dispute in which Plaintiff Twin City Fire Insurance Co. has refused to defend or advance defense costs to Defendants Glenn O. Hawbaker, Inc., Daniel Hawbaker, Patrick Hawbaker, and D. Michael Hawbaker (collectively "GOH") in two parallel class action litigations—*King v. Glenn O. Hawbaker, Inc.*[2] (the "King Class Action") and *Packer v. Glenn O. Hawbaker, Inc.*[3] (the "Packer Class Action") (together the "Underlying Class

---

[1]   The Court assumes the parties' familiarity with the relevant factual background, a more detailed recitation of which by the Court can be found in its August 31, 2023 Memorandum Opinion. *See* Doc. 47, Section I.A.
[2]   No. 2021-0957 (Pa. Ct. Comm. Pl.).
[3]   No. 4:21-CV-01747-MWB (M.D. Pa.).

Actions").[4] In the Underlying Class Actions it is alleged that GOH failed to pay wages in a timely fashion; misappropriated retirement account funds; violated Pennsylvania and Federal wage payment and collection laws;[5] failed to make timely contributions to retirement accounts as required by ERISA; and breached fiduciary duties.[6] At the core of the Underlying Class Actions are an alleged scheme to underpay prevailing wage workers by overstating the value of fringe benefits that was the subject of an investigation of the Office of the Attorney General of Pennsylvania.[7]

GOH is insured by a Policy[8] which includes a Fiduciary Liability Coverage Part that requires the insurer, Twin City, to defend and pay Losses incurred by GOH for claims arising from actual or alleged violations the obligations or duties of imposed by fiduciaries by ERISA[9] or any similar law. However, excluded from coverage are claims which involve allegations of a Wage and Hour Violation: actual or alleged violations of obligations imposed on GOH by any law "which govern[s] wage, hour, and payroll practices."[10]

---

[4]  The Underlying Class Action complaints were filed as exhibits to Twin City's Amended Complaint. King Compl., Doc. 24-5; Packer Compl., Doc. 24-6.
[5]  King Compl. Counts I-III.
[6]  Packer Compl. Counts I-II.
[7]  King Compl. ¶ 24; Packer Compl. ¶ 59.
[8]  Twin City attached the Policy as an exhibit to its Amended Complaint. Doc. 24-1. The defined terms capitalized herein have the meaning as given in the Policy and are discussed in greater detail in the Court's August 31 Opinion. *Supra* n.1.
[9]  Employee Retirement Income Security Act of 1974. 29 U.S.C. ch. 18 § 1001 *et seq*.
[10] *See generally* Policy, Doc. 24-1; Countercl. Op., *supra* n.8.

### B.     Procedural History

Twin City's First Amended Complaint seeks a declaration "that Twin City does not have a duty to provide any coverage, including any defense, in connection with the [King and Packer Class Actions]."[11] GOH Answered the First Amended Complaint and filed an Amended Counterclaim.[12] GOH's Amended Counterclaim alleged that Twin City breached the Policy by wrongfully denying coverage and/or its duty to defend GOH in connection with the King and Packer Class Actions.[13] GOH also sought a judgment declaring that the Policy either requires Twin City to defend GOH against the King and Packer Class Actions or requires it to advance defense costs to Defendants.[14]

On August 31, 2023, the Court granted Twin City's Motion to Dismiss Defendants' Amended Counterclaim.[15] In the accompanying Memorandum Opinion, the Court noted that "its reasoning and findings, if not dispositive, would necessarily bear on an evaluation of Twin City's requested relief" and encouraged the parties to "confer as to how they and the Court may efficiently reach a resolution of this matter."[16] Following a status conference with the parties, the Court set an October 12, 2023 deadline for Twin City to file a Motion for Judgment on the

---

[11]  Am. Compl., ¶¶ 76-80 (Count I); *id.* at 26 (prayer for relief).
[12]  *See* Ans. and Am. Countercl.
[13]  *Id.* ¶¶ 65-84 (Count I).
[14]  *Id.* ¶¶ 85-90 (Count II).
[15]  MTD Countercl. Ord., Doc. 48.
[16]  Countercl. Op., Doc. 47 at 30.

Pleadings.[17] Twin City timely filed that Motion[18] which GOH opposed, also filing a Motion for Reconsideration.[19] Both Motions are fully briefed and ripe for disposition.[20]

## II.  LAW

Courts "apply the same standard to motions to dismiss and for judgment on the pleadings:"[21] "'we accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"[22]

## III.  ANALYSIS

As foreshadowed by the Court in its prior Opinion and noted by Twin City:

> [T]his Motion for Judgment on the Pleadings presents the same issues upon which the Court has already ruled in granting Twin City's Motion to Dismiss, and the Court's analysis as to coverage in its August 23, 2023 Memorandum Opinion applies equally to the identical issue raised by the instant Motion for Judgment on the Pleadings.[23]

---

[17] Sept. 27, 2023 Ord., Doc. 52.
[18] Mot. for J. on Pleadings ("MJOP"), Doc. 53,
[19] Mot. for Recons. ("MFR"), Doc. 56.
[20] MJOP Br. in Supp. ("MJOP BIS"), Doc. 54; MJOP Opp. Br. ("MJOP BIO"), Doc. 55; MJOP Reply, Doc. 59; MFR BIS, Doc. 57; MFR BIO, Doc. 58; MFR Reply, Doc. 60.
[21] *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (citing *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).
[22] *Id.* (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020); *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018) and citing *Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)).
[23] MJOP BIS 7.

Opposing Twin City's Motion, GOH argues that there are claims for which they seek coverage that are not related to the alleged scheme to underpay prevailing wage employees:

> [T]here are two completely independent and separate claims: one goes to the "timing" of the contribution made to the employees' individual retirement accounts and the other goes to the "amount" of the contribution. The claim that the retirement plan contributions were not made timely is completely separate from the claim that the retirement plan contributions were not in the correct amount. . . . The Court failed to recognize this key distinction and simply grouped all claimants into the same category as being 'underpaid, when in reality, there are many claimants who were overpaid and are simply complaining that the payment was made in an untimely matter and therefore they 'lost interest, earnings and investment returns that otherwise would have been received.[24]

GOH also notes that, in its Opinions and Order regarding class certification in the Packer Class Action, the Court certified an "extremely broad" class comprised of all hourly wage GOH employees who worked on prevailing wage contracts from September 1, 2012 through 2018.[25] GOH suggests that this class necessarily includes employees "that received a retirement plan contribution that was actually in excess of the required amount" and "[t]he only claim this group of class members could potentially assert is that although they are not entitled to any further benefits, they are entitled to recover the alleged lost interest earnings and investment returns from the alleged untimely making of the contribution."[26] GOH reasons the Court

---

[24] MJOP BIO 6-7.
[25] MJOP BIO 7 (quoting Class Cert. Ord., *Packer*, No. 4:21-CV-01747-MWB, Doc. 35).
[26] *Id.* at 7-8.

implicitly acknowledged the existence of such individuals, when it noted that those who were underpaid "comprise the bulk of"—but not necessarily the entirety—"of the putative class"[27] and indicated that "[i]f discovery reveals that the class certified by the Court does include [overpaid] individuals, then [GOH] may request that the Court revisit the issue at that time."[28]

Contrary to GOH's suggestion, the Court did not fail to recognize the distinction between claims that the retirement plan contributions were not timely made and that they were not in the correct amount. Rather, the Court expressly rejected the conclusion on which GOH's argument relies: that those claims are "independent" and "completely separate."[29] The Court held that "[w]hether King and Packer assert wage and hour claims or the viability of such claims is the wrong inquiry. The correct inquiry is whether the claims that King and Packer did bring arose from Wage and Hour Violations."[30]

In its briefing on Twin City's Motion to Dismiss GOH's Counterclaims, GOH acknowledged "Counts I and III of the King Action Complaint involve claims for wage and hour violations."[31] King Count I alleges that GOH "breached its contract

---

[27] *Id.* at 9 (quoting Class Cert. Op., *Packer*, No. 4:21-CV-01747-MWB, Doc. 34 at 9-10).
[28] *Id.* (quoting Op. Recons. Class Cert., *Packer*, No. 4:21-CV-01747-MWB, Doc. 61 at 15). GOH also notes that the class certification orders and opinions in the King Class Action, currently pending in the Court of Common Pleas of Centre County, Pennsylvania largely parallel those of this Court in the Packer Class Action. *Id.* at 8 n.2.
[29] Countercl. Op. 27.
[30] *Id.*
[31] GOH MTD Countercl. Opp., Doc. 29 at 8.

with [the King Class] by *not paying them timely* for all wages and fringe benefits owed."[32] King Count III alleges that GOH "*failed to pay timely* all wages and fringe benefits earned by and owed to" the King Class.[33] The Policy explicitly excludes claims which "*involve* allegations in whole or in part, of a Wage and Hour Violation."[34] GOH has conceded that the alleged scheme to underpay its employees *involves* allegations that benefits payments were made untimely, if at all. That is the end of the inquiry. The Underlying Class Actions do not allege separate schemes of untimely payments in which one is entirely unrelated to the alleged scheme of underpayments.

    Nor do the companion claims in the Packer Class Action change this calculus. The alleged breaches of fiduciary duty for a failure to monitor the plan administrator did not occur in a vacuum. The alleged unlawful conduct of the plan administrator, which is plainly excluded from coverage, is necessarily the "but-for" cause of any breaches of fiduciary duty, and therefore also not covered under the Policy.[35]

    Neither does the existence of individuals who were overpaid by GOH's benefits practices. Those individuals may have different claims or raise other class certification issues. However, that those claims may be different does not render them unrelated. The Policy excludes "*any* Claim based upon, arising from, or in any

---

[32] King Compl. ¶ 60 (emphasis added).
[33] *Id.* ¶ 75 (emphasis added).
[34] Countercl. Op. 3 (emphasis added quoting Policy 14, 33).
[35] *Id.* at 25 (citing *Gen. Refractories Co. v. First State Ins. Co*, 855 F.3d 152, 159 (3d Cir. 2017) observing that "arising out of" requires "but for" causation).

7

way related to any Wage and Hour Violation."[36] As alleged in the Underlying Class Actions, the scheme of untimely benefits payments was part and parcel of the scheme to underpay employees. That the scheme may have impacted certain individuals differently, or perhaps even benefited certain individuals, is not relevant to the inquiry.

Finally, the Court notes that, to the extent that its prior Opinion did not explicitly distinguish the potential claims of underpaid employees from those of overpaid employees, this is attributable to GOH having not raised the issue at that time. GOH suggested that the plaintiffs in the Underlying Class Actions "asserted fiduciary liability claims since they realize there is a significant risk that any wage and hour claim will likely be precluded [by a restitutionary payment already made by GOH] or otherwise time-barred"[37] GOH did not suggest that any members of the Underlying Classes were overpaid, thus the Court had no occasion to expressly recognize the existence of such individuals in its prior Opinion. Nevertheless, for the reasons stated above, even if GOH had raised that possibility in its opposition to Twin City's prior motion, it would not have changed the outcome.

---

[36] Policy 33.
[37] GOH MTD Countercl. Opp. 9; *see also id.* at 9 n.1 (observing that the claims in the Packer Class Action "would have to be grounded in ERISA in order to gain the benefit of ERISA's six-year statute of limitations, which is longer than [the] six month or three-year limitations period covering prevailing wage and wage collection claims").

## IV.  CONCLUSION

For the foregoing reasons, Twin City's Motion for Judgment on the Pleadings is **GRANTED** and GOH's Motion for Reconsideration is **DENIED** as moot.[38]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[38] GOH acknowledges that, "[s]hould this Court reject all of GOH's arguments opposing the motion for judgment on the pleadings and enter judgment in favor of Twin City on Twin City's affirmative claims . . . there would be nothing for the Court to reconsider." MFR Reply 2.